1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8    VINCENT PAUL MELENDREZ,

9                          Petitioner,                CASE NO. 2:17-cv-00984-RAJ-BAT

10            v.                                      **REPORT AND
                                                     RECOMMENDATION**
11   RONALD HAYNES,

12                         Respondent.

13          Petitioner, a state prisoner who is currently confined at Stafford Creek Corrections Center

14   in Aberdeen, Washington, seeks relief under 28 U.S.C. § 2254 from a 2014 King County

15   Superior Court judgment and sentence. Dkt. 18; Dkt. 58-3, Ex. 26. Respondent has filed an

16   answer to Petitioner's amended habeas petition (Dkt. 18) and submitted relevant portions of the

17   state court record. Dkts. 57, 58. Petitioner has filed a response to Respondent's answer. Dkt. 59.

18   Petitioner has also filed a document entitled "motion for finding of subterfuge" (Dkt. 55) and a

19   "motion for evidentiary hearing" (Dkt. 64).

20          The Court has considered the parties' submissions, and the balance of the record, and

21   recommends Petitioner's "motion for finding of subterfuge" (Dkt. 55) be DENIED. The

22   arguments Petitioner raises in this motion are inextricably linked with and overlap with

23   Petitioner's habeas claims and the Court has thus considered the arguments in its merits

REPORT AND RECOMMENDATION - 1

determination of Petitioner's federal habeas petition. The Court further recommends that Petitioner's "motion for evidentiary hearing" (Dkt. 64) be DENIED and that the amended federal habeas petition (Dkt. 18) be DENIED and the case be DISMISSED with prejudice. The Court also recommends that a certificate of appealability be DENIED.

## I. **FACTUAL AND PROCEDURAL HISTORY**

The Washington State Court of Appeals ("Court of Appeals"), on direct appeal, summarized the facts relevant to Petitioner's conviction as follows:

> After Vincent Melendrez and his wife divorced in 2007, he raised their seven children in western Washington. R.M. is his oldest child, followed by two boys, W.M. and D.M. The family changed residences every year or so. For two long periods, they lived in Bremerton with Melendrez's brother Charlie and mother, Guadalupe. Melendrez began working nights at Microsoft in 2008. In November 2010, the family moved into the Windsor Apartments in Renton.

> Melendrez was a strict father. He set three rules for his family: never lie to or betray him, love each other, and defend the family. He posted a schedule on the refrigerator that governed his children's days. If they wanted to have friends over, Melendrez insisted he meet the friends first. When his children misbehaved by talking back, sneaking out, or having friends over without permission, Melendrez punished them physically, sometimes hitting them with a belt.

> R.M. testified her father began having sex with her in 2008, when she was 12 or 13 and the family lived at Charlie's house in Bremerton. She described the first incident, during which she said Melendrez showed her pornography, put his mouth on her vagina, and had vaginal intercourse with her. She testified that Melendrez had sex with her regularly between 2008 and 2011. She said that her brothers, W.M. and D.M., found her naked in bed with Melendrez in January 2009, then told her grandmother, Guadalupe, what they saw. R.M. said Guadalupe told her, "You need to push him away" and "Don't say anything because you don't want to get the family in trouble." W.M., D.M., and Guadalupe contradicted R.M.'s testimony, saying these events never happened.

> R.M. testified that Melendrez became more controlling after he began having sex with her, rarely letting her leave the house. She said sex became more frequent after the family moved to Renton and that her father virtually moved her into his bedroom.

> R.M. told D.M. in early 2009 that she and her father "did it." When D.M. confronted Melendrez about it, he denied it. Afterward, Melendrez forced R.M. to retract her claim in front of the family. After this incident, R.M. told W.M. two more times that her father was raping her. She also told a friend. On Thanksgiving 2010, R.M. left her house and stayed at the friend's house for three days. She refused to return home. During that time, she told the friend that her father had been having sex with her. Melendrez persuaded R.M. by phone to return home to collect her things. When she arrived, he pulled her

REPORT AND RECOMMENDATION - 2

inside and slammed the door. As punishment for running away, Melendrez removed R.M. from public high school and enrolled her in online classes. She remained in online school until the next school year began in September 2011, when he allowed her to return.

R.M. continued living at home. That August, Melendrez found pictures of naked people on her phone. He grounded her and threatened to prevent her from returning to high school. Then on October 3, 2011, the manager of the family's apartment complex found R.M. and a 16–year–old boy engaging in oral sex in a common restroom. When the manager notified Melendrez, he appeared to take the news calmly. But R.M. testified that Melendrez then beat her, made her face bleed, shoved soap in her mouth, and called her a whore. She said Melendrez imprisoned her in his room for all of October 4, blocking the door with an ironing board, a mattress, and a shoe. R.M. testified that she had nothing to eat until her brothers arrived home from school and let her out. Her brothers again contradicted her testimony. They testified that R.M. was not barricaded in her father's bedroom that day but that she and D.M. had a fight in which D.M. hit R.M. in the face repeatedly, breaking her lip. D.M. said the fight began because R.M. told D.M. she was planning to lie about their father sexually abusing her.

The next day, October 5, R.M. spoke to a counselor at her high school. During that interview, she told the counselor that her father had been having sex with her since 2008. The police arrested Melendrez later that day. Susan Dippery, a sexual assault nurse examiner, examined R.M. the same day.

At trial, the State presented DNA (deoxyribonucleic acid) evidence taken from the underwear R.M. wore to school on October 5 and from the boxers Melendrez was wearing when arrested, along with DNA evidence gathered during the sexual assault examination of R.M. The DNA analysis showed Melendrez's sperm and semen on the exterior of R.M.'s genitals. It also found R.M.'s DNA on the fly of Melendrez's boxers.

Dkt. 58-4, Ex. 32, at 4.

Petitioner was convicted of second-degree rape of a child, third degree rape of a child, two counts of first-degree incest, and witness tampering, and received an indeterminate life sentence. Dkt. 58-3, Ex. 26. Petitioner appealed his conviction to the Court of Appeals filing a brief through appellate counsel and a pro se statement of additional grounds for review. *Id.*, Exs. 28, 29. On December 28, 2015, the Court of Appeals affirmed Petitioner's convictions. Dkt. 58-4, Ex. 32. Petitioner filed a pro se petition for review with the Washington Supreme Court ("Supreme Court"). *Id.*, at Ex. 33. On June 29, 2016, the Supreme Court denied review without comment. *Id.*, Ex. 34. Petitioner filed a motion for reconsideration. *Id.*, Ex. 35. On July 21, 2016, the clerk of the Supreme Court sent Petitioner a letter explaining that under RAP 12.4(a), a party

1    may not file a motion for reconsideration of an order denying discretionary review. *Id.*, Ex. 36.

2    As such, the court took no action on the motion. *Id.*

3         Petitioner subsequently filed a pro se "motion to review propriety of appellate court

4    decision" challenging the legal and factual bases of the Court of Appeals' decision affirming his

5    conviction. *Id.*, Ex. 37. The Court Administrator/Clerk of the Court of Appeals entered a notation

6    ruling regarding the Petitioner's motion stating that "[a]s the Petition for Review was denied by

7    the Supreme Court on June 30, 2016 the motion will be placed in the file without action." *Id.*,

8    Ex. 38. Petitioner filed a motion to modify the Clerk's ruling which was denied by the Court of

9    Appeals. *Id.*, Exs. 39, 40. Petitioner sought discretionary review by the Supreme Court of the

10   Court of Appeals' denial of his motion to modify. *Id.*, Ex. 41. His petition for review, treated as a

11   motion for discretionary review, argued the Court of Appeals failed to properly consider his

12   motion to modify and sought review of the propriety of the Court of Appeals' opinion affirming

13   his conviction on appeal. *Id.*, Exs. 41, 42. On June 9, 2017, the Commissioner denied

14   discretionary review, explaining there was no right under the state's rules for reexamination of

15   the merits of Petitioner's direct appeal. *Id.*, Ex. 44. The Court of Appeals issued its mandate on

16   October 20, 2017. *Id.*, Ex. 45.

17        On June 29, 2017, Petitioner filed the instant federal habeas action. Dkt. 1. The Court

18   ordered service of the petition and appointed counsel. Dkt. 7. On September 27, 2017, Petitioner,

19   through counsel, filed an amended habeas petition and moved to stay and abey the federal habeas

20   proceedings based on his attempt to exhaust state-court remedies in a soon-to-be filed state

21   personal restraint petition. Dkt. 19. The Court granted the motion by order dated October 13,

22   2017, directed that all deadlines be stricken and that the parties each file a status report every 120

23

REPORT AND RECOMMENDATION - 4

1    days. Dkt. 21. The Court directed that respondent need not file an answer to the petition until 45

2    days after the stay of proceedings was lifted. *Id.*

3        In April of 2018, Petitioner filed a pro se motion to recall the mandate in the Court of

4    Appeals, again challenging the Court of Appeals' decision affirming his convictions. Dkt. 58-4,

5    Ex. 46. The Court of Appeals denied the motion without comment. *Id.*, Ex. 47. Petitioner sought

6    discretionary review by the Supreme Court. *Id.*, Ex. 48. The commissioner of the Supreme Court

7    denied review ruling that a motion to recall the mandate is not a proper means by which to

8    reexamine the merits of an appellate court's decision. *Id.*, Ex. 49. Petitioner filed a motion to

9    modify the commissioner's ruling. *Id.*, Ex. 52. On April 7, 2021, the Supreme Court denied the

10   motion to modify without comment. *Id.*, Ex. 53.

11       On October 19, 2018, (one day before the one-year time limit under Wash. Rev. Code §

12   10.73.090 was due to expire) Petitioner's post-conviction attorney, the assistant federal public

13   defender appointed by this Court to represent Petitioner in his federal habeas proceeding, filed a

14   personal restraint petition (PRP) with the Court of Appeals. *Id.*, Ex. 54. The petition raised two

15   claims alleging ineffective assistance of trial counsel, arguing trial counsel was deficient in (1)

16   failing to seek admission under state evidentiary rule ER 404(b) of evidence of R.M.'s motive to

17   fabricate the allegations against Petitioner, and (2) failure to investigate R.M.'s prior sexual

18   partners. *Id.*, Ex. 54, at 13-21. The petition argued the appellate court should analyze claims 1

19   and 2 cumulatively to determine the prejudice issue. *Id.*, Ex. 54, at 21-22. The petition also

20   argued the cumulative effect of all the alleged errors – the errors alleged in the PRP as well as

21   those litigated on direct appeal – rendered Petitioner's trial unfair and violated due process. *Id.*,

22   Ex. 54, at 22-23. The state filed a response. *Id.*, Ex. 55.

23

1    Petitioner was unsatisfied with the PRP filed by counsel and moved to discharge his

2    attorney and proceed pro se arguing that proceeding pro se would enable him to "cure the

3    inadequacies and deficiencies in the PRP and effectively respond" to the State's arguments. *Id.*,

4    Ex. 56. Petitioner's attorney did not oppose the request. *Id.*, Ex. 57. Petitioner moved for an

5    extension of time to file a reply brief. *Id.*, Ex. 58. The commissioner of the Court of Appeals

6    ruled that Petitioner could represent himself in the proceeding but advised him that he could not

7    raise any new issues or arguments in a reply brief. *Id.*, Ex. 59. The commissioner directed

8    Petitioner to inform the court whether he intended to file his own petition or whether he would

9    go forward represented by counsel. *Id.*

10    Petitioner responded to the commissioner's ruling by filing a "Notice of Intent to File

11    Petition Pro Se" indicating that he had chosen to file a pro se PRP rather than a reply brief.[1] *Id.*,

12    Ex. 61, at 2. The commissioner granted Petitioner's motion to withdraw the attorney prepared

13    PRP and granted him an extension to file a pro se PRP instead. *Id.*, Ex. 62. On August 5, 2019,

14    Petitioner filed his pro se PRP raising seven grounds for relief. *Id.*, Ex. 63, at 8-9. The state

15    moved to dismiss the PRP as either untimely or a "mixed" petition arguing that all but one of

16    Petitioner's claims were untimely under Wash. Rev. Code § 10.73.090. *Id.*, Ex. 64. The State

17    argued the only ground for relief that had been raised within the one-year time limit was the

18    ineffective assistance of counsel claim concerning counsel's alleged failure to investigate R.M.'s

19    alleged sex partners because that ground had at least been presented in the timely attorney-filed

20    PRP. *Id.*, Ex. 64, at 7, n. 1. The state noted that although Petitioner technically withdrew the

21    _____

22    [1] The Court notes that Respondent also initially included an exhibit in the state court record entitled "motion to request permission to amend PRP." Dkt. 58-4, Ex. 60. The motion included a different caption with a different petitioner named and case number. Respondent subsequently filed a "praecipe to correct

23    record" in which he indicated that the exhibit was included in error and requested that the Court remove and disregard the exhibit. Dkt. 60. Accordingly, as it appears this exhibit is not relevant to Petitioner's case, the Court has not considered it.

claim when he withdrew counsel's petition in its entirety, the State would not necessarily object to the appellate court's considering that one claim as timely. *Id.*, Ex. 64. But the State argued the petition was still not exempt from the time-bar because it did not rest solely on one of the grounds specified in Wash. Rev. Code § 10.73.100 and, as such, the entire petition was subject to dismissal for untimeliness. *Id.*, Ex. 64. Petitioner opposed the motion to dismiss. *Id.*, Ex. 65.

The chief judge of the Court of Appeals found the petition was untimely, or, at best, "mixed" and dismissed the petition. *Id.*, Ex. 66. Specifically, the chief judge stated:

> Melendrez's petition filed by his appointed federal public defender was timely. But Melendrez's pro se petition was filed after the expiration of the one-year time limit and is presumptively untimely. Neither claims of instructional error nor ineffective assistance of counsel fall within the exceptions outlined in RCW 10.73.100. It is true that one of the ineffective assistance of counsel claims that Melendrez raises in his pro se petition – that involving trial counsel's failure to investigate the victim's alleged prior sexual partners – is identical to that raised by his appointed federal public defender, and that claim would be timely. But even if one claim were timely, the remainder of the claims would be untimely, rendering the petition "mixed" and subject to dismissal.

*Id.*, Ex. 66. The chief judge also rejected Petitioner's suggestion that the commissioner, by giving him the option to withdraw his original petition and granting him extensions of time to file the pro se petition, had tacitly approved the filing of his otherwise untimely petition stating "the one-year time limit of RCW 10.73.090 is a statutory limitation period, and courts do not have the authority to waive statutory limitation periods." *Id.*, Ex. 66, at 4-5.

Petitioner sought review by the Supreme Court arguing the merits of the claims raised in the PRP to the Court of Appeals and that the chief judge's dismissal order was an "obvious subterfuge" and violated his due process rights. *Id.*, Ex. 67.[2] The commissioner agreed with

---

[2] Petitioner also argued in a subsequent pleading that the Washington State Governor's Proclamation 20-47, dated April 14, 2020, which tolled the time bar, exempted his petition from the time bar under Wash. Rev. Code § 10.731.090. *Id.*, Ex. 68. However, as Respondent notes, this argument has been rejected by Washington courts finding that the Proclamation preserved existing rights but did not revive expired claims. *See, e.g. In re Millspaugh*, 14 Wash. App. 2d 137, 141, 469 P.3d 336 (2020).

1    Court of Appeals' reasoning and denied review. The commissioner rejected Petitioner's

2    argument that Court of Appeals, by granting him extensions of time to file his pro se petition,

3    had in effect waived application of the time bar stating:

> [T]he court only gave him extensions of time to file his petition; it did not, nor could it,
> waive the one-year time limit on collateral relief. Simply granting extensions of time to
> file did not imply that the court considered the petition timely, since the court could not
> know until the petition was filed whether it asserted grounds for relief that may be
> exempt from the time limit. As authority to extend the statutory time limit, Mr.
> Melendrez relies on *In re Personal Restraint of Davis*, 188 Wn.2d 356, 362 n.2, 395 P.3d
> 998 (2017), but Davis involved a *timely* filed motion for extension of time, and in any
> event, the Court of Appeals here, as indicated did not purport to waive the time limit on
> collateral relief.

*Id.*, Ex. 67.

On May 22, 2020, Petitioner filed a second pro se PRP in the Court of Appeals, while his

first PRP was still pending in the Supreme Court. *Id.*, Ex. 74. Petitioner raised the same claims

raised in his first PRP and argued his second petition was exempt from the time bar due to

Governor Inslee's Proclamation 20-47. *Id.*, Ex. 74, at 7. The State moved to dismiss the second

PRP as time barred. *Id.*, Ex. 75. On October 15, 2020, the chief judge of the Court of Appeals

dismissed the second PRP as time barred. *Id.*, Ex. 77. Petitioner sought discretionary review in

the Supreme Court raising his same claims and arguing that his judgment and sentence was not

final, and therefore his PRP was timely, because his motion to recall the mandate was pending

when the chief judge dismissed his petition. *Id.*, Ex. 78. The commissioner of the Supreme Court

upheld the chief judge's dismissal, ruling "there is no statutory provision for tolling the time bar

on the basis of a motion to recall a mandate, and there is no precedent holding that such a motion

resets the finality of the conviction for purposes of the one-year time bar." *Id.*, Ex. 79. Petitioner

filed a motion to modify the commissioner's ruling which was denied without comment on April

28, 2021. *Id.*, Ex. 80, 81. The Court of Appeals issued a certificate of finality on June 4, 2021.

*Id.*, Ex. 82.

REPORT AND RECOMMENDATION - 8

On May 4, 2021, Petitioner filed a motion to lift the stay of proceedings on his federal habeas petition, as well as a "motion for finding of subterfuge." Dkts. 53, 55. On May 6, 2021, this Court issued an order lifting the stay on proceedings and directing the Respondent to file an answer. Dkt. 56. The Respondent filed an answer and relevant portions of the state court record. Dkt. 57. Petitioner filed a response to the answer. Dkt. 59. Petitioner subsequently filed a separate "motion for evidentiary hearing" and Respondent filed a response opposing the motion. Dkts. 64, 65.

## II.    GROUNDS FOR RELIEF

Petitioner identifies the following grounds for habeas relief:

1. The trial court's ruling on the Washington Evidence Rule (ER) 404(b) evidence violated his constitutional right to present a complete defense and his privilege against self-incrimination.

2. The amended information used in this case was constitutionally deficient and the trial court erred by denying the defense's request for a bill of particulars.

3. The trial court's ruling denying the defense request to question R.M. at the supplemental defense interview and denying the defense's request to cross-examine R.M. about an unnamed male violated Petitioner's rights to confrontation and to present a complete defense.

4. Defense counsel provided ineffective assistance of counsel at trial by (a) failing to investigate R.M.'s sexual partners and (b) failing to argue that R.M.'s bad acts and the discipline she received as a result were admissible as evidence of her motive to fabricate.

Dkt. 18.

## III.    DISCUSSION

A.    Legal Standards

1.    *Exhaustion*

Before seeking federal habeas relief, a state prisoner must exhaust the remedies available in the state courts. The exhaustion requirement reflects a policy of federal-state comity, intended

1    to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its

2    prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and

3    citation marks omitted).

4         There are two avenues by which a petitioner may satisfy the exhaustion requirement.

5    First, a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in

6    each appropriate state court, including the state supreme court with powers of discretionary

7    review, thereby giving those courts the opportunity to act on his claim. *Baldwin v. Reese*, 541

8    U.S. 27, 29 (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). "It has to be clear from the

9    petition filed at each level in the state court system that the petitioner is claiming the violation of

10   the federal constitution that the petitioner subsequently claims in the federal habeas petition."

11   *Galvan v. Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

12        Second, a petitioner may technically exhaust his state remedies by demonstrating that his

13   "claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 162-

14   63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*,

15   510 F.3d 1127, 1139 (9th Cir. 2007) (en banc). If the petitioner is procedurally barred from

16   presenting his federal claims to the appropriate state court at the time of filing his federal habeas

17   petition, the claims are deemed to be procedurally defaulted for purposes of federal habeas

18   review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A habeas petitioner who has defaulted

19   his federal claims in state court meets the technical requirements for exhaustion because "there

20   are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732

21   (2007). Federal habeas review of procedurally defaulted claims is barred unless the petitioner can

22   either demonstrate cause for the default and actual prejudice as a result of the alleged violation of

23

1    federal law, or demonstrate that failure to consider the claims will result in a fundamental

2    miscarriage of justice. *Id.*, at 724.

3            2.      *Merits Review*

4            Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

5    petition may be granted with respect to any claim adjudicated on the merits in state court only if

6    (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly

7    established federal law, as determined by the Supreme Court, or (2) the decision was based on an

8    unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

9    In considering claims pursuant to § 2254(d), the Court is limited to the record before the state

10   court that adjudicated the claim on the merits, and the petitioner carries the burden of proof.

11   *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976,

12   993 (9th Cir. 2013). "When more than one state court has adjudicated a claim, [the Court

13   analyzes] the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005)

14   (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

15           Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition

16   only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

17   question of law, or if the state court decides a case differently than the Supreme Court has on a

18   set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

19   Under the "unreasonable application" clause, a federal habeas court may grant the writ only if

20   the state court identifies the correct governing legal principle from the Supreme Court's

21   decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at

22   407-09. The Supreme Court has made clear that a state court's decision may be overturned only

23   if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

1   The Supreme Court has further explained that "[a] state court's determination that a claim lacks

2   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

3   correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

4   (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

5        Clearly established federal law, for purposes of AEDPA, means "the governing legal

6   principle or principles set forth by the Supreme Court at the time the state court render[ed] its

7   decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta.

8   *Id.* "If no Supreme Court precedent creates clearly established federal law relating to the legal

9   issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or

10  an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952,

11  955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

12       With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state

13  court's conclusion was based on "an unreasonable determination of the facts in light of the

14  evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

15  (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A]

16  decision adjudicated on the merits in a state court and based on a factual determination will not

17  be overturned on factual grounds unless objectively unreasonable in light of the evidence

18  presented in the state-court proceedings."). The Court presumes the state court's factual findings

19  to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing

20  evidence." *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

21       Here, Respondent does not dispute Petitioner properly exhausted Grounds 1, 2, and 3, but

22  argues that Ground 4, raised in Petitioner's amended petition is procedurally barred. Dkt. 57. As

23

1    discussed specifically below, the Court finds that Ground 4 is procedurally barred and should be

2    denied on that basis and that Grounds 1, 2, and 3, should be denied on the merits.

3    B.    Analysis

4        1.    *Ground One:*

5        Petitioner contends the trial court erred when it found evidence of R.M.'s prior bad acts

6    inadmissible under ER 404(b) unless the defense showed Petitioner was aware of the alleged acts

7    and disciplined R.M. in response to those acts. Dkt. 18, at 13-20. Petitioner argues that the trial

8    court's ruling regarding the ER 404(b) evidence pertaining to R.M.'s alleged prior bad acts

9    violated his Sixth Amendment right to present a defense and his Fifth Amendment privilege

10   against self-incrimination. *Id.*

11           a.    *Trial Court's ER 404(b) Evidentiary Ruling*

12       Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in

13   the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution

14   guarantees defendants 'a meaningful opportunity to present a complete defense.'" *Crane v.*

15   *Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984))

16   (internal citations omitted). However, the right to present a defense "is not unlimited, but rather

17   is subject to reasonable restrictions," such as evidentiary and procedural rules. *United States v.*

18   *Scheffer*, 523 U.S. 303, 308 (1998).

19       The Supreme Court has explained that "state and federal rulemakers have broad latitude

20   under the Constitution to establish rules excluding evidence from criminal trials." *Id.* The

21   Supreme Court has also noted its approval of "well-established rules of evidence [that] permit

22   trial judges to exclude evidence if its probative value is outweighed by certain other factors such

23   an unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South*

REPORT AND RECOMMENDATION - 13

*Carolina*, 547 U.S. 319, 326 (2006); *and see Crane*, 476 U.S. at 689–90 (the Constitution leaves to the judges who must make these decisions "wide latitude" to exclude evidence that is "repetitive ..., only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues.").

The right to present a meaningful defense is implicated when exclusionary rules "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.*, at 324 (citing *Scheffer*, 523 U.S. at 308). However, as the Supreme Court has itself noted "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509, 133 S.Ct. 1990, 1992 (2013) (citations omitted).

The record reflects that the defense's theory at trial was that R.M. made up the allegations of sexual abuse by Petitioner in retaliation for, or as a means of escaping, Petitioner's strict rules and discipline. *See, e.g.*, Dkt. 58-3, Ex. 25, at 2309, 2313; Dkt. 58-1, Ex. 1, at 80, 115. The defense trial memorandum discussed a "long history of disciplinary problems" by R.M including "suspected drug use, sexual contact with boys, sexting, hanging out with the 'wrong kids', lying, having male friends at home unsupervised and without permission[.]" Dkt. 58-3, Ex. 25, at 3, 7. The state sought to exclude any evidence of R.M.'s sexual history, including the texting of nude images, pursuant to the state's rape shield statute, RCW 9A.44.020, and other alleged misconduct pursuant to ER 404(b). [3] These issues were discussed at length at several

---

[3] Washington Evidence Rule 404(b) provides as follows:
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In order to admit ER 404(b) evidence, the trial court must: (1) find by a preponderance of the evidence that the conduct occurred; (2) identify the purpose for which the evidence is offered; (3) determine whether the evidence is relevant; and, (4) weigh the probative value of the evidence against the risk of unfair prejudice. *See State v. Gresham*, 173 Wn.2d 405, 421 (2012).

REPORT AND RECOMMENDATION - 14

points throughout the trial. *See* Dkt. 58, Ex. 1, at 72-88, Ex. 2, at 174-94, Ex. 11, at 1016-56, Ex. 14, at 1482-89, Ex. 15, at 1599-1646, Ex. 16, at 1661, 1760-71.

The trial court ruled that evidence of R.M.'s alleged prior "bad acts" was not admissible under ER 404(b) as character evidence but would be relevant and admissible if the defense showed Petitioner was aware of the alleged acts and disciplined R.M. in response to those acts. The trial court explained its ruling, prior to R.M.'s brother W.M.'s testimony, stating:

> So evidence of bad acts or conduct that can be evidence of bad acts, hanging out, smoking dope, hanging out in the wrong places, you know, these types of things, the relevance of that evidence comes from the knowledge of the father and the father's decision to act on that knowledge by imposing restrictions on [R.M.].
> So simply eliciting evidence of the bad acts themselves, there will be no relevance to the acts unless that was established.

Dkt. 58-3, Ex. 14, at 1488-89. The trial court later again clarified its ruling, stating:

> [I]t seems to come back to the same issue, which is whether it's relevant or not relevant, before we even get to the issue of whether it's hearsay or not hearsay, and as I have consistently said, the actions of [R.M.], whether it's sneaking out of the house or smoking marijuana or any other actions for which she may have been disciplined, are only relevant to the extent that Dad knew of them and that Dad took action because of them. And until those two things occur, his state of mind is not at issue, and, therefore, the acts are not relevant.

*Id.*, Ex. 16, at 1661-62.

On direct appeal, the state Court of Appeals rejected Petitioner's claim that the trial court's evidentiary ruling violated his constitutional right to present a complete defense, stating:

> Melendrez's defense focused on R.M.'s motive to lie. He tried to introduce evidence that R.M. constantly misbehaved by sneaking out of the house, "sexting," having boys over without permission, and engaging in sexual activity; that Melendrez disciplined her in response to her behavior; and that, in retaliation and to break free, R.M. fabricated a story of sex abuse. The State objected to the introduction of misbehavior evidence as irrelevant, prohibited by the rape shield statute, RCW 9A.44.020, and improper evidence of past specific acts under ER 404(b). The trial court ruled Melendrez could introduce this evidence if he first presented evidence that he knew of the misbehavior and disciplined R.M. in response to it. Ultimately, Melendrez introduced numerous instances of misbehavior. Melendrez testified after three other defense witnesses. His testimony was then interrupted several times by that of several other defense witnesses to accommodate their schedules.
>
> […]

REPORT AND RECOMMENDATION - 15

*Right To Present a Complete Defense*

The trial court ruled that evidence of R.M. sneaking out, "sexting," having boys over, and having sex was relevant and thus admissible only if Melendrez presented evidence he knew of that behavior. Melendrez contends that this ruling violated his Sixth Amendment right to present a complete defense.

The State responds first that we should decline to consider this issue because Melendrez raised it for the first time on appeal. A failure to object to a trial court error generally waives a party's right to raise the challenge on appeal unless a "manifest error affecting a constitutional right" occurred.[4] This court previews the merits of a claimed constitutional error to determine whether the argument is likely to succeed.[5]

Under the Sixth Amendment, defendants have a right to " 'a meaningful opportunity to present a complete defense.' "[6] This does not give them a right to present irrelevant evidence, however.[7] The trial court has discretion to determine the relevance of evidence.[8]

In *State v. Jones,*[9] the Supreme Court ruled that a trial court's refusal to allow a defendant to testify to the circumstances of an alleged sexual assault violated the defendant's right to present a defense. The proffered testimony indicated that the sexual contact occurred consensually during an alcohol-fueled sex party and was not rape as the complaining witness claimed.[10] The court distinguished "between evidence of the general promiscuity of a rape victim and evidence that, if excluded, would deprive defendants of the ability to testify to their versions of the incident."[11] The court reasoned that the proffered evidence was not "marginally relevant" but of "extremely high probative value," since it was the defendant's "entire defense."[12]

In contrast, the evidence Melendrez sought to introduce was not his "entire defense." Excluding evidence of R.M.'s perceived misbehavior did not deprive Melendrez of the ability to testify to his version of any incident, as in *Jones.*[13] Instead, testimony that R.M. was sexually active, used drugs, and broke her father's rules resembled general promiscuity evidence, which, as the trial court correctly ruled, could only be relevant to show bias. Even then, its probative value was slight. The evidence Melendrez sought to introduce was thus "marginally relevant," not "high[ly] probative."[14]

In addition, defendants seeking appellate review of a trial court's decision to exclude evidence generally must have made an offer of proof at trial.[15] An extended colloquy in the record can substitute for this offer of proof if it makes clear the substance

---

[4] [Fn. 7 by Court of Appeals] RAP 2.5(a); *State v. Kalebaugh,* 183 Wn.2d 578, 583, 355 P.3d 253 (2015).

[5] [Fn. 8 by Court of Appeals] *State v. Huyen Bich Nguyen,* 165 Wn.2d 428, 433–34, 197 P.3d 673 (2008).

[6] [Fn. 9 by Court of Appeals] *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (internal quotation marks omitted) (quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)); *see State v. Lynch,* 178 Wn.2d 487, 491, 309 P.3d 482 (2013).

[7] [Fn. 10 by Court of Appeals] *Jones,* 168 Wn.2d at 720.

[8] [Fn. 11 by Court of Appeals] *Salas v. Hi–Tech Erectors,* 168 Wn.2d 664, 668, 230 P.3d 583 (2010).

[9] [Fn. 12 by Court of Appeals] 168 Wn.2d 713, 721, 230 P.3d 576 (2010).

[10] [Fn. 13 by Court of Appeals] *Jones,* 168 Wn.2d at 721.

[11] [Fn. 14 by Court of Appeals] *Jones,* 168 Wn.2d at 720–21.

[12] [Fn. 15 by Court of Appeals] *Jones,* 168 Wn.2d at 721.

[13] [Fn. 16 by Court of Appeals] *See Jones,* 168 Wn.2d at 720–21.

[14] [Fn. 17 by Court of Appeals] *See Jones,* 168 Wn.2d at 721.

[15] [Fn. 18 by Court of Appeals] *State v. Vargas,* 25 Wn.App. 809, 816–17, 610 P.2d 1 (1980).

REPORT AND RECOMMENDATION - 16

of the evidence a party wished to introduce.[16] If Melendrez wanted to preserve error as to the exclusion of an item of evidence, he should have made an offer of proof at trial. He concedes that he did not do so. And neither the record nor oral argument makes clear the substance of the evidence Melendrez wished to introduce. Melendrez thus did not preserve the right to request review of the exclusion of evidence about R.M.'s perceived misbehavior.

Further, Melendrez *did* introduce evidence of that behavior and the discipline he imposed in reaction to it. Before trial, Melendrez's counsel argued that the trial court should allow Melendrez to present evidence showing why he took disciplinary steps against R.M. This evidence included R.M.'s brothers' discovery of "sexts" on her phone and the ensuing conversations between R.M., her brothers, and Guadalupe. It also may have included evidence referred to in Melendrez's trial briefing, including suspected drug use, sexual activity, lying, and generally hanging out with the wrong crowd. Either the State or Melendrez eventually introduced evidence of all this behavior. Thus, not only did Melendrez fail to preserve this issue by making an offer of proof at trial, but he has not shown that the trial court excluded any highly probative evidence.

Melendrez claimed that he had reason to punish R.M. and this gave R.M. a motive to lie about Melendrez raping her. The facts introduced at trial to support this defense gave the jury ample opportunity not to believe R.M. That it believed her does not give Melendrez grounds for appeal.

[…]

Because our preview of the merits shows that Melendrez likely will not succeed on his Sixth Amendment claim, Melendrez does not show a manifest constitutional error on appeal. We therefore decline to review his Sixth Amendment claim under RAP 2.5(a).

As the Ninth Circuit in *Moses v. Payne*, 555 F.3d 742, 757-58 (9th Cir. 2009) observed, the Supreme Court's cases addressing the intersection of constitutional rights and state evidentiary rules have focused on whether an evidentiary rule, by its own terms, violates a defendant's right to present a defense. *See also Brown v. Horell,* 644 F.3d 969, 983 (9th Cir. 2011). Specifically, the Ninth Circuit in *Moses* summarized the relevant Supreme Court case law as follows:

[I]n *Holmes,* the Court concluded that a defendant's constitutional rights were violated by an evidentiary rule that prevented the defendant from presenting evidence that a third party had committed the crime if the judge determined that the prosecutor's case was strong. 547 U.S. at 328–31, 126 S.Ct. 1727. The Court determined that this evidentiary rule did not "rationally serve" the goal of "excluding evidence that has only a very weak logical connection to the central issues." *Id.* at 330, 126 S.Ct. 1727. In *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Court reached the same conclusion about an evidentiary rule that limited the defendant's testimony to matters she remembered before her memory had been hypnotically refreshed because it was "an arbitrary restriction on the right to testify in the absence of clear evidence by the State

---

[16] [Fn. 19 by Court of Appeals] *State v. Ray,* 116 Wn.2d 531, 539, 806 P.2d 1220 (1991); ER 103(a)(2).

REPORT AND RECOMMENDATION - 17

repudiating the validity of all posthypnosis recollections." Finally, in *Washington v. Texas,* the Court rejected an evidentiary rule that precluded an alleged accomplice of the defendant from testifying on the defendant's behalf (though he could testify for the government) because it could not "even be defended on the ground that it rationally sets apart a group of persons who are particularly likely to commit perjury." 388 U.S. at 22, 87 S.Ct. 1920; *see also Crane,* 476 U.S. at 690–92, 106 S.Ct. 2142 (identifying a constitutional violation where a state evidentiary rule precluded a defendant from introducing any evidence relating to the unreliability of his own confession); *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038 (concluding that a defendant's fair trial rights were violated when the combined effect of two state rules of evidence precluded him from effectively impeaching a witness whom he alleged was the actual culprit). On the other hand, the Supreme Court has upheld an evidentiary rule that excluded polygraph evidence in military trials because it did not "implicate any significant interest of the accused" and because it "serve[d] several legitimate interests in the criminal trial process." *Scheffer,* 523 U.S. at 309, 316–17, 118 S.Ct. 1261.

Dkt. 58-4, Ex. 32, at 2517-2521.

Here, Petitioner does not appear to challenge the constitutionality of ER 404(b) itself but, instead, the trial court's application of the evidentiary rule to limit the introduction of evidence related to R.M.'s alleged prior bad acts. Petitioner cites to no Supreme Court precedent addressing whether ER 404(b), or an analogous evidentiary rule, either by its own terms or the trial court's application of such an evidentiary rule, violates a defendant's right to present a complete defense. In general, the rules addressed by the Supreme Court in *Washington*, *Crane*, *Chambers*, *Rock* and *Holmes*, "precluded a defendant from testifying, excluded testimony from key percipient witnesses, or excluded the introduction of all evidence relating to a crucial defense." *Moses*, 555 F.3d at 758. Here, ER 404(b), under which evidence of R.M.'s prior bad acts were excluded, does not appear to fall into any of the categories of evidentiary rules invalidated by the Supreme Court as violating the Sixth Amendment right to present a defense. *See Cernas v. Hedgpeth*, No. 1:10-CV-02126-AWI, 2013 WL 6230329, at *19 (E.D. Cal. Dec. 2, 2013) (observing that the California evidentiary rule under which a witness's prior bad acts were excluded did not "fall into any of the categories of evidentiary rules struck down by the Supreme Court."). As such, Petitioner cannot show that the state appellate court's rejection of this claim

was either contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Brewer*, 378 F.3d at 955 ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

The Court also notes that the record reflects that the evidentiary ruling appears to have been based upon legitimate evidentiary concerns. The trial court found that the evidence of R.M.'s alleged misbehavior was not admissible under ER 404(b) as an attack on her character but would be relevant and admissible if offered to explain the basis for Petitioner's decisions to discipline R.M. Accordingly, before other witnesses could testify to R.M.'s acts of alleged misconduct, the trial court reasonably concluded the defense would need to establish the foundation for Petitioner's personal knowledge of the alleged behavior. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). [17]

Furthermore, a violation of the right to present a defense merits habeas relief only if the error had a substantial and injurious effect on the verdict. *See Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010) (citing *Brecht*, 507 U.S. at 637-38). Here, Petitioner offers nothing beyond vague speculation regarding what specific evidence he was unable to introduce as a result of the Court's ruling or how introduction of that evidence would have made a meaningful

---

[17] The Court notes that to the extent Petitioner intends to allege the state court erred in applying state law, such a claim is not cognizable in a federal habeas action. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (internal quotation marks and citations omitted).

REPORT AND RECOMMENDATION - 19

difference to his defense and the outcome of the case. Petitioner speculates that due to the trial court's ruling he was "unable to cross-examine R.M. on any specifics as to the occasions when boys came over to the home." Dkt. 18, at 19. He further argues that "later in the trial, when the defense intended to elicit testimony from the grandmother (Guadelupe Melendrez), which would have contradicted the evidence the State introduced as to the occasions R.M. was restricted to home, the court further restricted the defense by preventing the grandmother from testifying to behaviors she observed, even after [Petitioner] had surrendered his Fifth Amendment right." *Id.*

The Court first notes that it is unclear exactly what "restriction" Petitioner is challenging regarding the testimony of Guadelupe Melendrez as Petitioner's citation to the record with respect to this argument does reflect a specific ruling or restriction by the trial court that the Court can discern. *See* Dkt. 18, at 19 (citing "RP 1894"). Moreover, Petitioner fails to explain how, exactly, pursuing the lines of questioning he claims were foreclosed by the trial court's ruling, would have affected the outcome of the trial. As the state Court of Appeals noted, Petitioner was able to introduce evidence at trial of R.M.'s behavior that Petitioner became aware of and responded to by imposing discipline. Specifically, Petitioner introduced the testimony of W.M., R.M.'s brother related to R.M. visiting with boys in her room behind closed doors as well as R.M.'s statements about having sex with boys. Dkt. 58-3, Ex. 15, at 1539-43. Petitioner also introduced testimony by the apartment manager of the building where Petitioner and R.M. lived regarding R.M.'s sexual encounter with a boy in the bathroom at the apartment complex. *Id.*, Ex. 17, at 1901-08. Petitioner also introduced testimony by R.M.'s grandmother about nude photos on R.M.'s phone as well as R.M.'s statement that she was having a sexual relationship with a boy. *Id.*, Ex. 17, at 1925-28. And Petitioner himself testified regarding becoming aware from

1    other sources about R.M.'s "sexting", sneaking out of the house, having sex, boys visiting her

2    while Petitioner was away, as well as suspected drug use. *Id.*, Ex. 17, at 1972-82, 2014-17.

3    　　　　Petitioner argues generally that Guadalupe Melendrez could have testified to other

4    instances of boys coming over to the home, R.M., going out, and R.M. being in relationships

5    with boys. But, as described above, the record shows that Petitioner was able to present ample

6    evidence of R.M.'s alleged misbehavior for the jury to consider in support of his defense that he

7    had reason to punish R.M. and that this gave R.M. a motive to lie about Petitioner raping her.[18]

8    Petitioner fails to show the state court's evidentiary ruling had a substantial and injurious effect

9    on the verdict.

10    　　　　The Court notes that Petitioner raises several arguments in his response to Respondent's

11    answer and in the document entitled "motion for finding of subterfuge" that the state appellate

12    court made "false statements" in its decision rejecting Petitioner's claims. Dkts. 55, 59. Namely,

13    Petitioner argues that the state appellate court incorrectly concluded that the defense had failed to

14    preserve his Sixth Amendment claim by failing to properly object and failing to make an offer of

15    proof at trial regarding the substance of evidence he was seeking to introduce at trial. Petitioner

16    argues that the court's incorrect conclusion constituted "a subterfuge to avoid federal review[.]"

17    Dkt. 55. In support of this argument, Petitioner cites to case law recognizing an exception to the

18    general deference afforded to state-court determinations of state-law questions where the state

19    court's "interpretation is 'clearly untenable *and* amounts to a subterfuge to avoid federal review'

20    of a constitutional violation.'" *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008) (quoting *Knapp v.*

21

22

---

23    [18] The Court also notes that Petitioner fails to adequately explain how this testimony would have been relevant and admissible unless there was also evidence Petitioner was aware of the other specific occurrences and disciplined R.M. as a result.

REPORT AND RECOMMENDATION - 21

1  *Cardwell,* 667 F .2d 1253, 1260 (9th Cir. 1982)) (emphasis added); *see also Mullaney,* 421 U.S.

2  at 691 n. 11.

3      While Petitioner disagrees with the state court's conclusion regarding preservation of his

4  claim, the record does not indicate any "obvious subterfuge" on the part of the state appellate

5  court in finding the challenge was not properly preserved. Furthermore, whether or not the

6  challenge was properly preserved[19], the state appellate court did ultimately review the

7  constitutional basis of the claim and, as discussed above, Petitioner fails to show that the analysis

8  of the constitutional issue was unreasonable nor has he shown the state court's evidentiary ruling

9  had a substantial and injurious effect on the verdict.[20]

10     Accordingly, Petitioner fails to demonstrate he is entitled to habeas relief on this claim.

11  The Court should dismiss this claim.

12          b.    *Privilege Against Self-Incrimination*

13     Petitioner also appears to argue that the trial court's ruling regarding the ER 404(b)

14  evidence pertaining to R.M.'s alleged prior bad acts violated his Fifth Amendment privilege

15  against self-incrimination by compelling him to testify in order to present the ER 404(b) evidence

16  regarding R.M.'s behavior. Dkt. 18.

17

18

---

19  [19] The Court notes that Petitioner points to the fact that defense counsel did, at one point, object to the trial
20  court's evidentiary ruling regarding 404(b) evidence as demonstrating that he properly preserved his
   claim. *See*, Dkt. 58-2, at 1067. However, although defense counsel did object to the trial court's
   evidentiary ruling, Petitioner points to nothing in the record reflecting that defense counsel objected to the
21  trial court's evidentiary ruling specifically as infringing upon his Sixth Amendment right to present a
   defense.
22  [20] The Court notes that Petitioner also alleges the Court of appeals made "materially false" statements or
   misrepresented the record by stating that "[b]efore trial, [Petitioner's] counsel argued that the trial court
   should allow [Petitioner] to present evidence showing why he took disciplinary steps against R.M." Dkt.
23  55, Ex. 2-21. The Court disagrees. Regardless of whether the discussion was initiated by the prosecutor or
   defense counsel, the Court finds the record supports the Court of Appeals' assertion that defense counsel
   did make this argument. *See* Dkt. 58-1, Ex. 1, at 112-115.

REPORT AND RECOMMENDATION - 22

The Supreme Court has held that "[t]he trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof; his determination will be reviewed only for abuse of discretion." *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). In *Brooks v. Tennessee*, 406 U.S. 605, 610-13 (1972), the Supreme Court held that a Tennessee statute, which required a criminal defendant to testify before any of his witnesses, violated the defendant's privilege against self-incrimination and right to due process. The Court explained that the Tennessee statute violated "an accused's constitutional right to remain silent insofar as it require[d] him to testify first for the defense or not at all." *Brooks*, 406 U.S. at 612.[21] The Court clarified, however, that its opinion did not "curtail[ ] in any way the ordinary power of a trial judge to set the order of proof." *Id.*

On direct appeal, the state Court of Appeals rejected Petitioner's claim that the trial court's ER 404(b) ruling violated his Fifth Amendment privilege against self-incrimination, stating:

> *Privilege against Self–Incrimination*
> Melendrez also contends that the trial court's evidentiary rulings violated his privilege against self-incrimination by compelling him to testify in order to introduce evidence about R.M.'s behavior.
> A state law requiring a defendant to testify before any other defense witnesses violates that defendant's Fifth Amendment right against self-incrimination.[22] This rule is not "a general prohibition against a trial judge's regulation of the order of trial in a way that may affect the timing of a defendant's testimony."[23] An evidentiary ruling can thus affect the order of defense witnesses without violating the defendant's right to present a

---

[21] The Court in *Brooks* also found the statute violated the defendant's Fourteenth Amendment right to due process because it "restrict[ed] the defense—particularly counsel—in the planning of its case," and deprived defendant of "the guiding hand of counsel in the timing of this critical element of his defense," *Brooks*, at 612–13.

[22] [Fn. 21 by Court of Appeals] *Brooks v. Tennessee,* 406 U.S. 605, 607, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972).

[23] [Fn. 22 by Court of Appeals] *Harris v. Barkley,* 202 F.3d 169, 173 (2d Cir.2000).

defense.[24] ER 611(a) gives the trial court wide discretion over the order and presentation of evidence.[25]

In *Menendez v. Terhune,*[26] the Ninth Circuit held that the trial court's ruling that certain evidence was inadmissible without the defendants testifying first did not violate the defendants' due process rights. The defendants sought to introduce evidence to explain their alleged fear of their parents to bolster the defendants' claim of self-defense in killing them.[27] The trial court ruled that the defendants' witnesses could not testify until after the defendants laid a foundation by testifying "about their actual belief of imminent danger."[28] The Ninth Circuit reasoned that the trial court judge "merely regulated the admission of evidence, and his commentary as to what evidence might constitute a foundation did not infringe on [the defendants'] right to decide whether to testify."[29] The court distinguished the Supreme Court's decision in *Brooks v. Tennessee,* which invalidated a statute that compelled a defendant to testify first if at all,[30] noting that unlike a defendant under the Tennessee statute, the defendants "had the opportunity, at every stage of the trial, to decide whether or not to take the stand."[31]

Here, unlike in *Brooks,* no statute or rule compelled Melendrez to testify first or at all. In fact, three of six defense witnesses testified before him. Melendrez argues that the trial court specified the order of his witnesses and "forced him to testify in order to admit relevant evidence," but that begs the question. Like the trial court in *Menendez,* the trial court here ruled that the misbehavior evidence Melendrez sought to admit was *not* relevant unless Melendrez laid a foundation by presenting evidence that he knew about the misbehavior. One way, but not the only way, Melendrez could do so was by testifying himself. In so ruling, the trial court properly used its discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence."[32] We therefore reject Melendrez's Fifth Amendment argument.

Dkt. 58-4, Ex. 32, at 2521-2524.

Petitioner fails to show the state appellate court's rejection of this claim was contrary to or an unreasonable application of clearly established law or an unreasonable determination of the facts. As described by the state appellate court, here, unlike in *Brooks,* no statute or rule

---

[24] [Fn. 23 by Court of Appeals] *See Menendez v. Terhune,* 422 F.3d 1012, 1031 (9th Cir.2005); *Johnson v. Minor,* 594 F.3d 608, 613 (8th Cir.2010).

[25] [Fn. 24 by Court of Appeals] *Sanders v. State,* 169 Wn.2d 827, 851, 240 P.3d 120 (2010). "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." ER 611(a).

[26] [Fn. 25 by Court of Appeals] 422 F.3d 1012, 1032 (9th Cir.2005).

[27] [Fn. 26 by Court of Appeals] *Menendez,* 422 F.3d at 1030.

[28] [Fn. 27 by Court of Appeals] *Menendez,* 422 F.3d at 1030–31.

[29] [Fn. 28 by Court of Appeals] *Menendez,* 422 F.3d at 1032; *see also Johnson,* 594 F.3d at 613.

[30] [Fn. 29 by Court of Appeals] 406 U.S. 605, 607, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972).

[31] [Fn. 30 by Court of Appeals] *Menendez,* 422 F.3d at 1031.

[32] [Fn. 31 by Court of Appeals] ER 611(a).

REPORT AND RECOMMENDATION - 24

compelled Petitioner to testify first or not at all. Furthermore, several federal circuit courts have subsequently distinguished *Brooks* and rejected constitutional challenges under circumstances similar to those presented in this case. Specifically, those courts have rejected constitutional challenges where the state court refused to accept the proffered testimony of other witnesses until a proper foundation was laid for that testimony, even under circumstances where the defendant's testimony was required to lay that foundation. *See, e.g., Menendez v. Terhune*, 422 F3d 1012, 1031–32 (9th Cir. 2005); *Johnson v. Minor*, 594 F.3d 608, 613 (8th Cir. 2010) (rejecting habeas challenge and finding the Court properly refused to accept the proffered testimony of other witnesses until a proper foundation was laid through defendant's testimony); *United States v. Singh*, 811 F.2d 758, 762 (2d Cir. 1987) ("[T]he court did not compel appellant to testify at all. It merely refused to accept the proffered testimony of other witnesses until a proper foundation was laid. There was nothing erroneous about this.").

The state appellate court reasonably analogized this case to the circumstances presented in *Menendez*. *Menendez,* 422 F3d 1012. In *Menendez*, the defendants, who were charged with murdering their parents, sought to introduce testimony from witnesses concerning alleged parental abuse to show that they feared their parents. *Id.*, at 1030. The trial court ruled the defendants could not offer the proposed testimony until they laid a foundation by testifying about their actual belief of imminent danger from their parents. *Id.*, at 1030–31. Defendants brought a federal habeas petition arguing that the trial court's ruling violated *Brooks* by effectively forcing them to choose between their Fifth Amendment right against self-incrimination and their Sixth Amendment right to present a defense. *Id.* The Ninth Circuit rejected the habeas challenge finding the state appellate court reasonably concluded that the trial court's ruling did not violate Petitioner's constitutional rights. *Id.* In doing so, the Court distinguished *Brooks* explaining that

1    the defendants in *Menendez* "had the opportunity, at every stage of the trial, to decide whether or

2    not to take the stand," whereas the defendant in *Brooks* was required to "testify before any other

3    witness was presented, lest he waive his right to testify in his own behalf." *Menendez,* 422 F.3d

4    at 1031–32 (citing *Brooks,* 406 U.S. at 610–11). The state appellate court here reasonably

5    concluded that, as in *Menendez*, the trial court's evidentiary ruling requiring that a foundation be

6    laid prior to introducing testimony regarding R.M.'s misbehavior, did not violate Petitioner's

7    constitutional rights.

8          Petitioner also argues that the state appellate court's decision here is contrary to the

9    Court's holding in *Simmons v. United States*, 390 U.S. 377, 394 (1968). However, *Simmons*,

10   dealt with an entirely different circumstance than that presented in this case. Specifically, in

11   *Simmons*, the Supreme Court held that a defendant's testimony in support of his motion to

12   suppress evidence on Fourth Amendment grounds could not be admitted against him on the issue

13   of guilt at his later trial, explaining that it was "intolerable that one constitutional right should

14   have to be surrendered in order to assert another." *Simmons*, 390 U.S. at 394; *see United States v.*

15   *Quinn*, 728 F.3d 243, 254–55 (3d Cir. 2013). This is not the circumstance presented in this case.

16   Here, the trial court merely ruled that the evidence of R.M.'s alleged misbehavior Petitioner

17   sought to admit was not relevant and admissible unless a foundation was laid that Petitioner

18   knew about the misbehavior. The state appellate court's decision was not contrary to or an

19   unreasonable application of *Simmons*. The remaining Supreme Court cases cited by Petitioner

20   likewise provide no basis for relief. Absent clearly established law relating to Petitioner's Fifth

21   Amendment challenge to the trial court's evidentiary ruling requiring that a proper foundation be

22   laid prior to accepting the proffered testimony of other witnesses, the state court's decision

23

1    cannot be contrary to or an unreasonable application of clearly established federal law. *See*

2    *Brewer*, 378 F.3d at 955.

3        Petitioner also challenges, both in his petition and in the document entitled "motion for

4    finding of subterfuge", the state appellate court's statement that "the trial court here ruled that the

5    misbehavior evidence Melendrez sought to admit was *not* relevant unless Melendrez laid a

6    foundation by presenting evidence that he knew about the misbehavior. One way, but not the

7    only way, Melendrez could do so was by testifying himself." Dkt. 18; Dkt. 55, at 15, Appendix

8    A Ex. 2-2. Petitioner contends this statement was incorrect because the trial court made several

9    statements indicating that it was not clear to the court how the misbehavior evidence became

10   relevant unless Petitioner himself testified that he knew of the misbehavior and disciplined R.M.

11   because of the misbehavior. Petitioner points to the following statements by the trial judge in

12   addressing what aspects R.M.'s prior behavior defense counsel could address in cross-examining

13   R.M.:

14           With regard to the bad acts of [R.M.] the only way in which any specific acts of
        misconduct outside of sexual contact of [R.M.] would be relevant in this case would be if
15      the defendant is going to testify that the purpose for which he imposed discipline was not
        to keep his – his daughter as – as a sexual partner in their home or the enforce his desire
16      to have sex with her, but instead was to deal with disciplinary issues. That's the first step.
             The second step is the specific acts would only be relevant if they are acts that
17      the defendant knew of, because he wouldn't be imposing discipline for those acts unless
        he knew about them. So they don't become relevant until that testimony is elicited.

18   Dkt. 58-2, Ex. 11, at 1056. The Court notes that elsewhere in the record the trial court

19   asserted more generally that:

20           So evidence of bad acts or conduct that can be evidence of bad acts, hanging out,
        smoking dope, hanging out in the wrong places, you know, these types of things, the
21      relevance of that evidence comes from the knowledge of the father and the father's
        decision to act on that knowledge by imposing restrictions on [R.M.].
22           So simply eliciting evidence of the bad acts themselves, there will be no
        relevance to the acts unless that was established.

23

1    The state court could reasonably interpret the record and the trial court's statements as reflecting,

2    as in *Menendez*, that "[t]he [trial] judge did not require the defendant[] to take the stand; he

3    merely regulated the admission of evidence, and his commentary as to what evidence might

4    constitute a foundation did not infringe on Petitioners' right to decide whether to testify."

5    *Menendez*, 422 F3d at 1031–32. As noted above, the case law reflects that courts have rejected

6    constitutional challenges where the state court refused to accept the proffered testimony of other

7    witnesses until a proper foundation was laid for that testimony, even under circumstances where

8    the defendant's testimony was, in fact, required to lay that foundation. *See, e.g., Johnson v.*

9    *Minor*, 594 F.3d 608, 613 (8th Cir. 2010) (rejecting habeas challenge and finding the Court

10   properly refused to accept the proffered testimony of other witnesses until a proper foundation

11   was laid through defendant's testimony). There is nothing to indicate the trial court completely

12   foreclosed or barred defense counsel from arguing other possible theories under which R.M.'s

13   prior bad acts might be admissible. The state appellate court's general statement implying that

14   there may have been other ways of laying a foundation for the admission of R.M.'s prior

15   misbehavior does not constitute an unreasonable determination of the facts or render its rejection

16   of Petitioner's constitutional challenge unreasonable. Nor does the record reflect any "obvious

17   subterfuge" on the part of the state appellate court in reaching its conclusion.

18        Accordingly, Petitioner fails to demonstrate he is entitled to habeas relief on this claim.

19   The Court should dismiss this claim.

20        2.    *Ground Two: Charging Document and Bill of Particulars*

21        Petitioner argues the amended information used in this case was constitutionally deficient

22   and the trial court erred by denying the defense's request for a bill of particulars. Dkt. 18.

23   Petitioner contends that other than stating an act occurred sometime within a timeframe of

1    several months to over a year in the majority of the counts, there were no facts provided which

2    support the elements of the offenses. *Id.* Petitioner appears to argue that because he was not

3    provided facts regarding the specific act or acts he was accused of and/or more specific dates, he

4    was unable to prepare a proper defense. *Id.*

5        The Sixth Amendment to the United States Constitution, which is applicable to the states

6    through the Due Process Clause of the Fourteenth Amendment, guarantees a criminal defendant

7    the fundamental right to be clearly informed of the nature and cause of the charges against him.

8    *See* U.S. Const. amend. VI; *see also*, *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle

9    of procedural due process is more clearly established than that notice of the specific charge, and

10   a chance to be heard in a trial of the issues raised by that charge, if desired, are among the

11   constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). A

12   charging document is sufficient to inform a defendant of the charges against him if it (1) contains

13   the elements of the offense charged and fairly informs a defendant of the charge against which he

14   must defend, and, (2) enables a defendant to plead an acquittal or conviction in bar of future

15   prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

16       The Ninth Circuit has also found that adequate notice of the nature and cause of the

17   offense may be provided through a source other than the primary charging document. *See*

18   *Sheppard v. Rees*, 909 F.2d, 1234, 1236, n. 2 (9th Cir. 1990); *Gautt v. Lewis*, 489 F.3d 993, 1009

19   (9th Cir. 2007). Notice may be provided by way of a complaint, an arrest warrant, or a bill of

20   particulars. *Id*. Notice may even be provided during the course of trial by way of the

21   prosecution's opening statement or through the presentation of substantial evidence. *See*

22   *Stephens v. Borg*, 59 F.3d 932 (9th Cir. 1995); *see Murtishaw v. Woodford*, 255 F.3d 926, 953

23   (9th Cir.2001) (defendant received adequate notice of the prosecution's felony-murder theory

from the prosecutor's opening statement, the evidence at trial, and the jury instructions conference); *Calderon v. Prunty*, 59 F.3d 1005, 1008 (9th Cir. 1995) (defendant received adequate notice of prosecution's lying-in-wait theory from the prosecutor's opening statement and argument at motion for acquittal).

Here, the record shows Petitioner was charged on March 6, 2012, in the original information with two counts of second-degree rape of a child (Counts 1 and 2) and one count of first-degree incest (Count 3). Dkt. 58-3, Ex. 21. Count 1 encompassed a charging period of January 1, 2008 through April 28, 2008, while Count 2 was for the period from April 29, 2008 through April 28, 2009. *Id*. The first-degree incest count was alleged to have occurred on or about October 5, 2011. *Id*. A few weeks before trial, on January 6, 2014, the State filed an amended information that added three new counts. *See* Dkt. 58-3, Ex. 22. Counts 1 and 2 remained unchanged. Count 3 charged third-degree rape of a child between April 29, 2009 and April 28, 2011. *Id*. Count 4 alleged an additional first-degree incest charge occurring on or between April 29, 2011, through October 4, 2011. *Id*. Count 5 was the renumbered version of the previous Count 3 alleging first-degree incest on or about October 5, 2011. *Id*. And Count 6 charged Melendrez with tampering with a witness between or about October 5, 2011, and November 8, 2011. *Id*. The defense did not object to the State's motion to amend, nor did the defense request a bill of particulars. Dkt. 58-1, Ex. 1 at 36-38.

Midway through trial, on February 3, 2014, the State moved for leave to file a second amended information. The second amended information combined the two counts of second-degree rape of a child (Counts 1 and 2 in the amended information) into a single Count 1, and dismissed Count 2. Dkt. 58-3, Ex. 23. The amended Count 1 encompassed the same charging period as the two counts it replaced—from January 1, 2008, through April 28, 2009. *Id*. The

REPORT AND RECOMMENDATION - 30

other four counts (Counts 3-6) remained unchanged. *Id.*; *see* Ex. 13 at 1229-30. In response to

the amendment request, defense counsel acknowledge that he had not previously requested a bill

of particulars, but was requesting one with respect to the amendment. Ex. 13, at 1227, 1233

("[D]efense would provisionally agree to the amendment, but also make a motion for a bill of

particulars with respect to that amendment.").

   The only change between the first and second amended information was that the former

Count 2 was dismissed and the date range for the new Count 1 was expanded to include the

period covered in former Counts 1 and 2. In response to defense counsel's request, the Court

inquired: "[O]f what value is a bill of particulars at this point to the defense, particularly given

that, although it was not charged in one count, it was charged in two counts, the defense was

aware of the overall time period in the beginning?" *Id.*, at 1234. In response, defense counsel

stated "[a]nd we were, and so the self-defense prepared to address the entire time period; whether

it be one charge or two." *Id.* Defense counsel then asked that the Court give a "*Petrich*

instruction"[33] to the jury. *Id.*, at 1235. The State and the Court agreed that a *Petrich* instruction

could be given. *Id.* The Court then asked if there was any need for further argument on this point,

and defense counsel indicated there was not. *Id.*[34]

   The Court of Appeals rejected Petitioner's claim regarding the sufficiency of the charging

document and the denial of a bill of particulars on direct appeal finding:

> *Sufficiency of the Information and Denial of Bill of Particulars*
>    Melendrez next contends that because the information covered long periods,
> giving him little information about when the alleged crimes occurred, he could not

---

[33] In *Petrich*, the Washington Supreme Court held that where evidence shows that the defendant committed several distinct criminal acts, the jury must unanimously agree that the same particular criminal act has been proved beyond a reasonable doubt. *State v. Petrich*, 101 Wash. 2d 566, 683 P.2d 173 (1984), *overruled in part on other grounds*, *State v. Kitchen*, 110 Wash. 2d 403, 405-06 & n.1, 756 P.2d 105 (1988).
[34] Near the conclusion of the trial, the information was amended again in some minor respects that do not appear to be challenged by Petitioner. *See* Dkt. 58, Ex. 24, Ex. 18, at 2080-81.

REPORT AND RECOMMENDATION - 31

effectively defend against the charges with an alibi. Melendrez did present evidence that he worked the night shift at Microsoft and was dependable in showing up for work to counter R.M.'s testimony that Melendrez frequently raped her at night and eventually moved her into his bedroom.

An information that accurately states the elements of the crime charged is not constitutionally defective.[35] The information must also allege facts supporting those elements.[36] This requirement's purpose "is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against.' "[37]

Melendrez makes no claim that the information omits any element of any crimes charged. Instead he argues that the information was not specific enough about the time period in count I to provide him with adequate notice. But in child sex abuse cases, "whether single or multiple incidents of sexual contact are charged, a defendant has no due process right to a reasonable opportunity to raise an alibi defense."[38] Alibi is not likely to be a valid defense where, as here, " 'the accused child molester virtually has unchecked access to the victim,' " because in such cases " '[t]he true issue is credibility.' "[39]

Melendrez relies on a South Carolina case, *State v. Baker,*[40] where the court held an indictment to be unconstitutionally overbroad. There, the State amended the information two weeks before trial to enlarge by over three years the period when the defendant committed alleged child abuse.[41] The defendant's only available complete defense was alibi. The court ruled that the late amendment of the charging instrument made that defense impossible.[42]

*Baker* is the only authority Melendrez cites for the proposition that a long charging period can violate a defendant's constitutional rights. But apart from being nonbinding authority, *Baker* is distinguishable. Unlike the defendant in *Baker,* Melendrez had ample notice of the charges and the period they encompassed. The amended information did not change the charging period; it simply combined the periods for counts I and II and eliminated count II. Melendrez knew for nearly two years before trial that he had to defend against charges that he raped his daughter during the 16–month period described in the amended count I.[43] Thus, the information satisfied constitutional notice requirements.[44]

Melendrez also contends that even if the information was not deficient, the trial court abused its discretion in denying Melendrez a bill of particulars because without it he could not adequately prepare a defense.

---

[35] [Fn. 32 by Court of Appeals] *State v. Bonds,* 98 Wn.2d 1, 17, 653 P.2d 1024 (1982); *State v. Zillyette,* 178 Wn.2d 153, 158, 307 P.3d 712 (2013).

[36] [Fn. 33 by Court of Appeals] *State v. Nonog,* 169 Wn.2d 220, 226, 237 P.3d 250 (2010).

[37] [Fn. 34 by Court of Appeals] *Zillyette,* 178 Wn.2d at 158–59 (quoting *State v. Kjorsvik,* 117 Wn.2d 93, 101, 812 P.2d 86 (1991)).

[38] [Fn. 35 by Court of Appeals] *State v. Cozza,* 71 Wn.App. 252, 259, 858 P.2d 270 (1993).

[39] [Fn. 36 by Court of Appeals] *State v. Hayes,* 81 Wn.App. 425, 433, 914 P.2d 788 (1996) (quoting *State v. Brown,* 55 Wn.App. 738, 748, 780 P.2d 880 (1989)).

[40] [Fn. 37 by Court of Appeals] 411 S.C. 583, 769 S.E.2d 860, 865 (2015).

[41] [Fn. 38 by Court of Appeals] *Baker.* 769 S.E.2d at 864.

[42] [Fn. 39 by Court of Appeals] *Baker.* 769 S.E.2d at 864.

[43] [Fn. 40 by Court of Appeals] The first information is dated March 2012; the trial began in January 2014.

[44] [Fn. 41 by Court of Appeals] *See Zillyette,* 178 Wn.2d at 158

REPORT AND RECOMMENDATION - 32

An information may be constitutionally sufficient but still so vague as to make it subject to a motion for a more definite statement.[45] A trial court should grant a bill of particulars if the defendant needs the requested details to prepare a defense and to avoid "prejudicial surprise."[46] If the bill of particulars is not necessary, then the trial court does not abuse its discretion in denying it.[47]

In *State v. Noltie,*[48] this court rejected challenges to an information with a lengthy charging period and the denial of a bill of particulars, holding the defendant had adequate notice of the charges against him. The charges "spanned a 3–year period and presented a pattern of frequent and escalating abuse" of the defendant's stepdaughter.[49] The defendant claimed he lacked adequate notice to prepare a defense because the information was too vague for him to "separate the charged acts from the 'hundreds of innocent contacts' he had with [the victim] during the charging period."[50] This court rejected that argument, noting the defendant had an opportunity to interview the complaining witness. The court also noted that the defendant did not point to any "information that surprised him at trial [ ] that would have provided additional notice of the charges."[51] The court concluded that the trial court did not abuse its discretion.[52]

Here, as in *Noltie,* the charges did not surprise the defendant, even without a bill of particulars.[53] Like Noltie, Melendrez's counsel interviewed the complaining witness, R.M., at length and in advance of trial. And like Noltie, Melendrez fails to point out any information that would have given him additional notice of the charges. His only specific contention as to prejudice is that he lacked the dates he needed to present an alibi defense. But "a defendant has no due process right to a reasonable opportunity to raise an alibi defense" against a charge of child sex abuse.[54] And as the State points out, the period over which the alleged crimes took place didn't change with the amendment, which merely combined counts I and II. Melendrez thus failed to show how a bill of particulars would have helped his defense. The trial court did not abuse its discretion in denying a bill of particulars.

Dkt. 58-4, Ex. 32, at 2524-2528.

Petitioner fails to show the state appellate courts' rejection of his claim was contrary to or an unreasonable application of clearly established law or an unreasonable determination of the

---

[45] [Fn. 42 by Court of Appeals] *Bonds,* 98 Wn.2d at 17; *Dictado,* 102 Wn.2d at 286.

[46] [Fn. 43 by Court of Appeals] *State v. Allen,* 116 Wn.App. 454, 460, 66 P.3d 653 (2003) (quoting 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 129 (3d ed.1999)).

[47] [Fn. 44 by Court of Appeals] *Dictado,* 102 Wn.2d at 286.

[48] [Fn. 45 by Court of Appeals] 57 Wn.App. 21, 30, 786 P.2d 332 (1990), *aff'd,* 116 Wn.2d 831, 841–42, 809 P.2d 190 (1991).

[49] [Fn. 46 by Court of Appeals] *Noltie,* 116 Wn.2d at 845.

[50] [Fn. 47 by Court of Appeals] *Noltie.* 57 Wn.App. at 30.

[51] [Fn. 48 by Court of Appeals] *Noltie.* 57 Wn.App. at 31.

[52] [Fn. 49 by Court of Appeals] *Noltie.* 57 Wn.App. at 31.

[53] [Fn. 50 by Court of Appeals] *Noltie,* 116 Wn.2d at 845.

[54] [Fn. 51 by Court of Appeals] *Cozza,* 71 Wn.App. at 259.

facts. As noted by the state appellate court, Petitioner does not appear to claim that the information omits any element of the offenses charged. Rather, his primary argument appears to be that the information was not specific enough with respect to the time period provided to provide him with sufficient notice of the charges. Petitioner cites to no United States Supreme Court case, nor is the Court aware of any, holding that a charging document in a child sexual abuse case is constitutionally deficient where it fails to provide the specific dates of the incidents of alleged abuse. *See Leonard v. Perez*, No. 2:12-CV-02161-JKS, 2015 WL 5255357, at *7 (E.D. Cal. Sept. 9, 2015) ("The United States Supreme Court has not determined that an information in a child sexual abuse case is constitutionally deficient for failure to provide specific dates of incidents."). In fact, several federal courts have found that the lack of specificity in a charging document regarding the dates of alleged child abuse did not violate the petitioner's constitutional right to sufficient notice. *See Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements."); *Madden v. Tate,* 1987 WL 44909, at *1–*3 (6th Cir. 1987) (six months); *Parks v. Hargett,* 1999 WL 157431, at *4 (10th Cir. 1999) (seventeen months); *Fawcett v. Bablitch,* 962 F.2d 617, 619 (7th Cir. 1992) (six months); *Hunter v. New Mexico,* 916 F.2d 595, 600 (10th Cir. 1990) (three years); *Brodit v. Cambra*, 350 F.3d 985, 988–89 (9th Cir. 2003) (finding that state court holding that due process was not violated by the absence of precise dates in charging document was not contrary to nor an unreasonable application of clearly established law), *cert. denied,* 542 U.S. 925, 124 S.Ct. 2888, 159 L.Ed.2d 787 (2004). Absent a Supreme Court case holding that the constitution requires a charging document to specify the exact dates, or define a more specific or shorter date range, of

alleged sexual abuse, the Court cannot conclude that the state court's rejection of Petitioner's claim here was contrary to or an unreasonable application of clearly established law.

With respect to the bill of particulars, defense counsel initially requested the bill of particulars when the information was amended a second time resulting in the dismissal of Count 2 and expansion of the date range of the new Count 1 to include the period covered in former Counts 1 and 2. However, the record reflects that in response to the Court's inquiry as to the value a bill of particulars would serve given the nature of the amendment, defense counsel conceded that the defense had prepared to defend the entire period covered by the two counts that were combined into one in the amended information. It does not appear that defense counsel either identified what other information he was seeking through a bill of particulars or that he pursued the request further. The Court notes that the record also reflects that, as the state appellate court observed, defense counsel had the opportunity to interview R.M. in advance of trial and thus it is unclear exactly what additional information would have been obtained through a bill of particulars or how the denial of the request rendered notice of the charges against Petitioner inadequate.

Petitioner argues the state appellate court incorrectly or falsely concluded that he "fail[ed] to point to any information that would have given him additional notice of the charges." Dkt. 18-1, at 10; Dkt. 58-4, Ex. 32, at 2527; Dkt. 55, Appendix A, Ex. 2-32 – 2-35. Petitioner points to the fact that the prosecutor disclosed that R.M. had acknowledged shortly before trial that she had had oral sex with a boy on October 3, 2011, despite denying this in her prior statements. However, the record shows that Petitioner's counsel was able to cross-examine Petitioner regarding her prior denials of the incident and Petitioner fails to explain how R.M.'s prior denial

1    or inconsistent statements regarding this issue render the charging document or notice of the

2    charges constitutionally deficient.

3          Petitioner also appears to argue that he should have been permitted to conduct additional

4    discovery with respect to this boy because he may have had information about R.M.'s

5    misbehavior. However, Petitioner's argument is entirely speculative and fails to explain how

6    additional discovery with respect to this boy was required in order to adequately inform him of

7    the elements of the offenses charged and the charges against which he must defend. The record

8    does not support the conclusion that the denial of additional discovery with respect to this

9    individual rendered the charging document or notice of the charges constitutionally deficient.

10         Petitioner also points to some instances of testimony from R.M. at trial that had not been

11    discussed in prior statements, depositions, or interviews as well as some alleged inconsistencies

12    between R.M.'s testimony and her prior statements. Dkt. 18, at 27; Dkt. 58, at 1071-1072, 1088-

13    1089 (inconsistency between testimony and prior statement regarding school R.M. said she was

14    attending during a certain period), 1097-98 (inconsistency regarding where R.M. was living

15    when she started regularly sleeping in her father's room), 1100 (testimony R.M. considered

16    suicide not previously discussed in prior interviews or statements), 1135 (inconsistency between

17    whether R.M. spoke to a friend about running away on October 4 or October 5), 1139 (testimony

18    R.M. had oral sex with Petitioner on October 5 not previously discussed in prior interviews),

19    1165-73 (testimony Petitioner purchased multiple pregnancy tests for R.M. not previously

20    discussed in prior interviews), 1182-83 (inconsistency between testimony and prior statement

21    regarding whether R.M. spoke to a police officer on one occasion).

22         Petitioner states that "[m]ost notable of these [instances] is the alleged offense of anal sex

23    which R.M. testified at trial occurred as punishment for when she claims [Petitioner] found out

1   she and her brothers were allowing kids over to the house without permission and sneaking out

2   while he was at work." Dkt. 18, at 27; Dkt. 58-1, Ex. 10, at 835. Petitioner indicates that on

3   cross-examination, R.M. admitted that she had not previously discussed this act. Dkt. 18, at 27,

4   Dkt. 58-2, Ex. 11, at 1071-1072. Petitioner indicates that these inconsistencies were cited in the

5   reply brief presented to the Court of Appeals on direct appeal. Dkt. 18-1, at 10. However, the

6   inconsistencies Petitioner points to and the fact that R.M. testified at trial regarding an incident

7   of sexual abuse not previously specifically disclosed does not undermine the validity of the

8   charging document which provided a period of time and identified the elements of the offenses

9   charged. The record shows that defense counsel was able to cross-examine R.M. regarding the

10  inconsistencies as well as her failure to previously discuss a specific incidence or mention certain

11  facts.

12          Petitioner identifies no Supreme Court case, nor is the Court aware of any, requiring a

13  charging document to specify the exact dates or define a more specific or shorter date range of

14  alleged child sexual abuse in order to provide a defendant constitutionally sufficient notice of the

15  charges. Nor does Petitioner identify any Supreme Court case, and the Court is not aware of any,

16  requiring the prosecution to identify every single incidence and detail of sexual abuse allegedly

17  occurring repeatedly over an extended period in the charging document or in subsequent

18  discovery in order to satisfy the constitutional requirement that Petitioner receive adequate notice

19  of the charges. Petitioner also does not identify any Supreme Court case, and the Court is not

20  aware of any, indicating that where the child sexual abuse is alleged to have occurred repeatedly

21  over an extended period of time, the fact that testimony is ultimately elicited at trial regarding an

22  additional specific incident of abuse or additional details of abuse, not previously specifically

23  disclosed, undermines the constitutional sufficiency of the charging document or otherwise

1   violates the constitutional requirement that Petitioner receive adequate notice of the charges. In

2   sum, Petitioner fails to show the state appellate court's decision was unreasonable.

3        Accordingly, Petitioner fails to demonstrate he is entitled to habeas relief on this claim.

4   The Court should dismiss this claim.

5        3.    *Ground Three: Unnamed Boy - Right to Confrontation and to Present Complete*

6                 *Defense*

7        Petitioner asserts in Ground three, that the trial court's ruling denying the defense's

8   request to question R.M. at the supplemental defense interview and denying the defense's

9   request to cross-examine R.M. about an unnamed boy she engaged in oral sex with on October 3,

10  2011, violated Petitioner's rights to confrontation and to present a complete defense. Dkt. 18.

11       As previously discussed, the Constitution guarantees defendants 'a meaningful

12  opportunity to present a complete defense.'" *Crane*, 476 U.S. at 690. However, the right to

13  present a defense "is not unlimited, but rather is subject to reasonable restrictions," such as

14  evidentiary and procedural rules. *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  Moreover,

15  "state and federal rulemakers have broad latitude under the Constitution to establish rules

16  excluding evidence from criminal trials." *Id*. The Supreme Court has also noted its approval of

17  "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative

18  value is outweighed by certain other factors such an unfair prejudice, confusion of the issues, or

19  potential to mislead the jury." *Holmes*, 547 U.S. at 326; *and see Crane*, 476 U.S. at 689–90 (the

20  Constitution leaves to the judges who must make these decisions "wide latitude" to exclude

21  evidence that is "repetitive ..., only marginally relevant" or poses an undue risk of "harassment,

22  prejudice, [or] confusion of the issues.").

23

REPORT AND RECOMMENDATION - 38

The constitutional right to present a complete defense includes the right to present evidence, including the testimony of witnesses. *Washington v. Texas,* 388 U.S. 14, 18–19, 23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). However, "the right to present a complete defense is only implicated when the evidence the defendant seeks to admit is 'relevant and material, and … vital to the defense.'" *Gutierrez v. Swarthout*, No. 1:10-CV-01014-LJO, 2012 WL 5210107, at *25 (E.D. Cal. Oct. 22, 2012) (quoting *Washington v. Texas*, 388 U.S. at 16). The right to present a meaningful defense is implicated when exclusionary rules "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Id.* at 324 (citing *Scheffer*, 523 U.S. at 308). However, as the Supreme Court has itself noted "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada*, 569 U.S. at 509 (citations omitted).

The right to cross-examine guaranteed by the Confrontation Clause includes the right "to delve into the witness' story to test the witness' perceptions and memory," as well as the right to impeach the witness by "cross-examination directed toward revealing possible biases, prejudices, or ulterior motives." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316–17; *accord Pennsylvania v. Ritchie*, 480 U.S. 39, 51–52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality opinion). Cross-examination need not be "certain to affect the jury's assessment of the witness's reliability or credibility" to implicate the Sixth Amendment. *Fowler v. Sacramento Cnty. Sheriff's Dep't*, 421 F.3d 1027, 1036 (9th Cir. 2005). Rather, the Confrontation Clause protects the right to engage in cross-examination that "might reasonably" lead a jury to "question[ ] the witness's reliability or

credibility." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). However, the Confrontation Clause does not confer an unlimited right to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam)). Rather, the right to cross-examine is "[s]ubject ... to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation." *Davis*, 415 U.S. at 316, 94 S.Ct. 1105.

The Supreme Court has held that "trial judges retain wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931) (A trial court "may exercise a reasonable judgment in determining when [a] subject is exhausted" and should "protect [a witness] from questions which go beyond the bonds of proper cross-examination merely to harass, annoy or humiliate him."). But any "restrictions on a criminal defendant's rights to confront adverse witnesses ... may not be arbitrary or disproportionate to the purposes they are designed to serve." *Ortiz v. Yates*, 704 F.3d 1026, 1035 (9th Cir. 2012) (alteration and internal quotation marks omitted) (quoting *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991)).

The record reflects that prior to trial the prosecution revealed to defense counsel and the Court that R.M. had admitted to engaging in oral sex with a boy in a public restroom at the apartment complex on October 3,[55] despite having denied this previously. Dkt. 58, Ex. 5, at 267-

---

[55] The Court notes that the transcript reflects that defense counsel initially represented to the trial court, based on an email from the prosecutor, that the incident occurred on October 3, 2010. Dkt. 58, Ex. 5, at

73. At trial R.M. admitted on direct examination that she had performed oral sex on an unnamed boy in a public restroom at the apartment complex on October 3, 2011. Dkt. 58-1, Ex. 10, at 919. On cross-examination R.M. acknowledged she had lied about this incident and had repeatedly denied it during several interviews with police and attorneys. *Id.*, Ex. 11, at 1065. However, when defense counsel asked R.M. to identify the unnamed boy, the prosecutor objected on the grounds that it was irrelevant. Dkt. 58, Ex. 11, at 1102-03. The Court sustained the objection. *Id.*

The Court of Appeals rejected Petitioner's claim regarding the unnamed boy on direct appeal:

> Melendrez contends that the trial court abused its discretion in ruling irrelevant the identity of the boy R.M. was caught in a restroom with. Melendrez argues that the trial court's ruling denied him the ability to question the boy and that the boy's testimony would have helped establish R.M.'s bias against her father.
> "[A] defendant has a constitutional right to impeach a prosecution witness with bias evidence" using an independent witness.[56] An error in excluding such evidence is harmless if "no rational jury could have a reasonable doubt that the defendant would have been convicted even if the error had not taken place."[57]
> Melendrez offers only one theory about the relevance of the boy's identity, that the boy could have information about R.M.'s "behavior-based issues." As noted above,

---

267. However, the remainder of the record appears to reflect that this reference to 2010 was erroneous. The remainder of the discussion and testimony at trial regarding this incident makes clear that the incident occurred on October 3, 2011, not October 3, 2010. Dkt. 58, Ex. 11, at 1102. The Court notes that Petitioner raises to this Court for the first time in his response to the Respondent's answer and in his "motion for finding of subterfuge" that the reference to October 3, 2010, related to an entirely different sexual encounter involving R.M. Dkt. 59, at 21; Dkt. 55, at 9. The Court notes that Petitioner did not present this argument in his amended petition and the record does not appear to support the conclusion that there were two separate incidents on October 3, 2010 and October 3, 2011. The Court also notes that Petitioner does not appear to have raised this argument to the Court of Appeals on direct appeal. In fact, in his pro se statement of additional grounds for review presented to the state Court of Appeals on direct appeal, Petitioner in fact acknowledges that this was the same incident. Dkt. 58-3, Ex. 29, at 2428 n. 3 (noting that "[a]lthough the date is October 3, 2011, defense counsel mis-spoke and stated 2010 when bringing this before the court. This was clarified when the state introduced evidence."); *see also* Dkt. 58-1, Ex. 10, at 908-918. The Court notes that, in the first instance, this argument is not properly before the Court as Petitioner did not raise it in his amended petition. However, even if it were properly before the Court, in light of Petitioner's acknowledgment in his own briefing before the state court, the fact that the record does not support the conclusion that there were two separate incidents on October 3, 2010, and October 3, 2011, and the fact that Petitioner presents no other evidence to indicate that these were separate incidents, it appears Petitioner's arguments pertaining to a separate October 3, 2010, incident are unsupported by the record and lack merit.

[56] [Fn. 77 by Court of Appeals] *State v. Spencer,* 111 Wn.App. 401, 408, 45 P.3d 209 (2002).

[57] [Fn. 78 by Court of Appeals] *Spencer,* 111 Wn.App. at 408.

REPORT AND RECOMMENDATION - 41

the trial court properly limited evidence of R.M.'s behavior to events known to
Melendez. Melendez does not explain how the boy could be unknown to him, yet know
about behavior that Melendez was aware of. But we need not decide whether the trial
court erred in denying Melendez the ability to introduce testimony from the boy because
any error in doing so was harmless. "[N]o rational jury could have a reasonable doubt"
that Melendez would have been convicted even if the trial court had not excluded
evidence of the boy's identity. Melendez presented ample evidence of R.M.'s potential
bias without the boy. And R.M.'s testimony, along with the DNA evidence, would have
been unchanged.

Dkt. 58-4, Ex. 32, at 2534-2535.

Petitioner fails to show the state appellate courts' rejection of this claim was contrary to

or an unreasonable application of clearly established law or an unreasonable determination of the

facts. Under *Van Arsdall*, "trial judges retain wide latitude ... to impose reasonable limits on ...

cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." *Van Arsdall*, 475 U.S. at 679. Here, the trial court could reasonably conclude that the

identity of the boy R.M. admitted to engaging in oral sex with on October 3, 2011, was not

relevant in the context of the trial. The only specific argument Petitioner makes that the Court

can discern regarding the relevance of this evidence was that the boy could have had information

regarding R.M.'s "behavior-based issues" and speculation that R.M. previously lied about having

sexual intercourse with the boy because he may have known something relevant. But, as noted

above, the trial court reasonably limited evidence of R.M.'s behavior-based issues to events

known to the Petitioner, and there is no indication the unnamed boy was involved in any other

behavior, or was aware of any other behavior on the part of R.M., that the Petitioner was aware

of.

The Court cannot conclude, based on the record, that the trial court's ruling was

"arbitrary or disproportionate to the purpose[] [it was] designed to serve" i.e., limiting

interrogation on issues that are irrelevant or only marginally relevant, such that it implicated

REPORT AND RECOMMENDATION - 42

1    either the Confrontation Clause or the right to present a complete defense. *Ortiz*, 704 F.3d at

2    1035. Furthermore, this information also does not appear to be in the nature of evidence that is

3    "relevant and material, and … vital to the defense" such that it might implicate Petitioner's

4    constitutional rights. The record shows that defense counsel thoroughly cross-examined R.M.

5    over the course of three days, questioning her extensively regarding her biases and motivation as

6    well as inconsistencies between her trial testimony and prior statements. *See* Dkt. 58, Ex. 11, at

7    1061-1107; Ex. 12, at 1121-98; Ex. 13, at 1255-66, 1268-69.

8         Moreover, Petitioner fails to show the trial court's ruling on this issue had a substantial

9    and injurious effect on the verdict. As discussed above, Petitioner was able to present ample

10   evidence of R.M.'s potential bias and motive for testifying. *See supra at* Section III.B.1.a, at pp.

11   19-20. There is simply no evidence in the record, beyond pure speculation, that the identity of

12   the boy in question would have made any difference to the outcome of the trial. There is no basis

13   to believe this information would have altered or significantly undermined R.M.'s testimony

14   regarding the sexual abuse committed by Petitioner, or the DNA evidence showing Petitioner's

15   sperm and semen on the exterior of R.M.'s genitals and R.M.''s DNA on the fly of Petitioner's

16   boxers.

17        In sum, Petitioner fails to show that the state appellate court's rejection of this claim was

18   unreasonable, nor has he shown the state court's evidentiary ruling had a substantial and

19   injurious effect on the verdict.  Accordingly, Petitioner fails to demonstrate he is entitled to

20   habeas relief on this claim. The Court should dismiss this claim.

21        4.    *Ground Four: Ineffective Assistance of Counsel*

22        Petitioner asserts in Ground 4, that his attorney provided ineffective assistance by (1)

23   failing to investigate the identity of the unknown boy or any other of R.M.'s boyfriends or sexual

1    partners, and (2) failing to argue that the evidence of R.M.'s prior bad acts and the discipline she

2    received from Petitioner as a result was admissible to show R.M.'s motive to fabricate the

3    allegations against Petitioner. Dkt. 18. Petitioner's ineffective assistance claims were presented

4    to the state courts in his first and second PRPs. The state Court of Appeals denied his first PRP

5    as untimely. Dkt. 58-4, Ex. 66. As discussed by the Court of Appeals, Petitioner requested to

6    withdraw his attorney's timely filed PRP and to instead file a pro se petition. However, the pro se

7    petition was filed on August 5, 2019, more than one year after his conviction became final on

8    October 20, 2017. Dkt. 58-4, Ex. 66. Accordingly, the state Court of Appeals concluded that

9    Petitioner's petition was untimely or, at best, mixed. *Id.* The state Supreme Court upheld the

10   reasoning of the Court of Appeals and denied Petitioner's petition for review. Petitioner's second

11   PRP, filed in May 2020, was also subsequently denied by the Court of Appeals as time-barred,

12   and the Petitioner's petition for review was denied by the Supreme Court.

13         When a prisoner defaults on his federal claims in state court pursuant to an independent

14   and adequate state procedural rule, federal habeas review of the claims is barred unless the

15   prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

16   violation of federal law, or demonstrate that failure to consider the claims will result in a

17   fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If the last

18   state court to decide the issue clearly and expressly states that its judgment rests on a state rule of

19   procedure, the habeas petitioner is barred from asserting the same claim in a later federal habeas

20   proceeding. *Harris v. Reed*, 489 U.S. 255 (1989).

21         For a state procedural rule to be "independent," the state law ground for decision must

22   not rest primarily on federal law or be interwoven with federal law. *Coleman*, 501 U.S. at 734-35

23   (citing *Michigan v. Long,* 463 U.S. 1032, 1040–41 (1983)). A state procedural rule is "adequate"

1    if it was "firmly established" and "regularly followed" at the time of the default. *Beard v.*

2    *Kindler*, 558 U.S. 53, 60 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). A state

3    procedural rule is not rendered inadequate simply because it is discretionary. *Id.*, at 60-61. The

4    Ninth Circuit has recognized that the state time bar statute invoked by the state appellate courts

5    to bar the ineffective assistance of counsel claim asserted in Petitioner's fourth ground for relief,

6    RCW 10.73.090, provides an independent and adequate state procedural ground to bar federal

7    habeas review. *See Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004); *Shumway v. Payne*, 223

8    F.3d 982, 989 (9th Cir. 2000).

9        Petitioner argues in his response to the answer and in his "motion for finding of

10   subterfuge" that the state courts engaged in intentional subterfuge in finding the claims raised in

11   his PRP untimely. Dkts. 55, 59. Petitioner appears to challenge Respondent's assertion that the

12   claims raised in his PRP were disposed of on independent and adequate state grounds. The Court

13   finds no evidence of "intentional subterfuge" by the state courts. Rather, it appears the state

14   courts rejected Petitioner's PRPs based on independent and adequate state procedural rules. The

15   record does not demonstrate that the state courts, in refusing to consider his PRPs, were engaging

16   in any sort of subterfuge or deliberately attempting to evade federal review. Nothing in record

17   reflects the state court intentionally mislead Petitioner. Petitioner's misunderstanding regarding

18   how much time he would have to resubmit his petition under the statute of limitations does not

19   demonstrate subterfuge on the part of the state court nor does Petitioner cite to any case law

20   indicating the state court had an obligation to inform him regarding any potential statute of

21   limitations issues he might face. Furthermore, as the state Supreme Court pointed out in ruling

22   on Petitioner's motion for discretionary review, the court, at that juncture, had no reason to know

23

1   what claims Petitioner intended to present in his pro se petition and whether those claims would

2   have been time-barred.[58] Dkt. 58-4, Ex. 69.

3          Federal habeas review of petitioner's procedurally defaulted claims is barred unless he

4   can demonstrate cause and prejudice, or a fundamental miscarriage of justice. *Coleman*, 501 U.S.

5   at 750. To satisfy the "cause" prong of the cause and prejudice standard, Petitioner must show

6   that some objective factor external to the defense prevented him from complying with the state's

7   procedural rule. *Id.* at 753; *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a petitioner can

8   demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the

9   unavailability of a factual or legal basis for a claim, or some interference by officials).  To show

10   "prejudice," petitioner "must shoulder the burden of showing, not merely that the errors at his

11   trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

12   disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v.*

13   *Frady*, 456 U.S. 152, 170 (1982) (emphases in original). And only in a "truly extraordinary

14   case," the Court may grant habeas relief without a showing of cause or prejudice to correct a

15   "fundamental miscarriage of justice" where a constitutional violation has resulted in the

16   conviction of a defendant who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 338 (1995).

17          In *Martinez v. Ryan,* 566 U.S. 1, 132 S.Ct. 1309 (2012), the Supreme Court established a

18   limited exception to the general rule that a federal court cannot grant a habeas petition that has

19   been procedurally defaulted in state court. *See Coleman*, 501 U.S. at 729–30. Specifically, in

20   *Martinez*, the Supreme Court held that inadequate assistance of postconviction review counsel or

21

22

23

---

[58] The Court notes that Petitioner makes several other allegations regarding alleged "subterfuge" by the state courts in considering his state court filings. *See* Dkt. 55. However, none of Petitioner's other allegations demonstrate "obvious subterfuge" by the state courts or demonstrate he is entitled to habeas relief.

1   lack of counsel "at initial-review collateral proceedings may establish cause for a prisoner's

2   procedural default of a claim of ineffective assistance at trial." *Martinez*, 132 at 1315.  To

3   establish cause under *Martinez*, the petitioner must show that "(1) the underlying ineffective

4   assistance of trial counsel claim is 'substantial'; (2) the petitioner was not represented or had

5   ineffective counsel during the [post-conviction relief ('PCR') ] proceeding; (3) the state PCR

6   proceeding was the initial review proceeding; and (4) state law required (or forced as a practical

7   matter) the petitioner to bring the claim in the initial review collateral proceeding." *Dickens v.*

8   *Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc) (citing *Trevino v. Thaler*, 569 U.S. 413,

9   422, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013)). To satisfy the first prong of *Martinez*, "a

10  prisoner must ... demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a

11  substantial one, which is to say that the prisoner must demonstrate that the claim has some

12  merit." *Martinez*, 132 S.Ct. at 1318. "An IAC claim has merit where (1) counsel's 'performance

13  was unreasonable under prevailing professional standards,' and (2) 'there is a reasonable

14  probability that but for counsel's unprofessional errors, the result would have been different.'"

15  *Cook v. Ryan*, 688 F.3d 598, 610 (9th Cir. 2012) (internal citation omitted). "Substantiality"

16  requires a petitioner to demonstrate that "reasonable jurists could debate whether ... the petition

17  should have been resolved in a different manner or that the issues presented were adequate to

18  deserve encouragement to proceed further." *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir.

19  2013) (internal citation omitted). "[A] claim is 'insubstantial' if 'it does not have any merit or ...

20  is wholly without factual support.'" *Id.* (quoting *Martinez,* 132 S.Ct. at 1319).

21          Here, Petitioner fails to show the underlying ineffective assistance of counsel claim was

22  substantial.[59] The Sixth Amendment guarantees a criminal defendant the right to effective

23

---

[59] The Court notes that Respondent argues that Petitioner had counsel in the initial PRP and there is no
indication counsel provided ineffective assistance. Dkt. 57. Respondent argues that Petitioner should not

REPORT AND RECOMMENDATION - 47

1   assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an

2   ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial

3   balance between defense and prosecution that the trial was rendered unfair and the verdict

4   rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective

5   assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under

6   *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the

7   deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

8       With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

9   performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of

10  counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney

11  performance requires that every effort be made to eliminate the distorting effects of hindsight, to

12  reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

13  counsel's perspective at the time." *Id*.

14      The second prong of the *Strickland* test requires a showing of actual prejudice related to

15  counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

16  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

17  would have been different. A reasonable probability is a probability sufficient to undermine

18  confidence in the outcome." *Id*., at 694. The reviewing court need not address both components

19  of the inquiry if an insufficient showing is made on one component. *Id*., at 697.

20

21

22

23  _____

be considered to satisfy the second prong of *Martinez* because he decided to discharge his attorney. *Id.*
Because the Court concludes that Petitioner fails to show the underlying ineffective assistance of counsel
claim is "substantial", the Court need not determine whether Petitioner meets the other prongs of the
*Martinez* test.

REPORT AND RECOMMENDATION - 48

1    Here, Petitioner appears to first argue that trial counsel should have interviewed and

2    presented testimony from some of the boys R.M. knew, including the boy involved in the

3    October 3, 2011 incident. "[C]ounsel has a duty to make reasonable investigations or to make a

4    reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at

5    691. For deficient investigations, "the test for prejudice is whether the noninvestigated evidence

6    was powerful enough to establish a probability that a reasonable attorney would decide to present

7    it and a probability that such a presentation might undermine the jury verdict." *Mickey v. Ayers*,

8    606 F.3d 1223, 1236-37 (9th Cir. 2010) (citing *Wiggins v. Smith*, 539 U.S. 510, 535, 123 S. Ct.

9    2527, 156 L. Ed. 2d 471 (2003)). However, "the duty to investigate and prepare a defense is not

10   limitless: it does not necessarily require that every conceivable witness be interviewed."

11   *Hendricks v. Calderon,* 70 F.3d 1032, 1040 (9th Cir.1995) (citations and quotations omitted).

12        Further, where a habeas petitioner alleges ineffective assistance of counsel based on the

13   failure to call a witness, Petitioner must show that the witness was likely to have been available

14   to testify, that the witness would have given the proffered testimony, and that the witness's

15   testimony created a reasonable probability that the result of the proceeding would have been

16   different. *See Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003); *and see U.S. v. Berry*,

17   814 F.2d 1406, 1409 (9th Cir. 1987) (Petitioner failed to show he was prejudiced, under

18   *Strickland*, by defense counsel's failure to call witnesses where he offered no indication of what

19   the witnesses would have testified to or how it might have changed the outcome.); *Bragg v.*

20   *Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (rejecting ineffective assistance of counsel claim

21   for failure to interview witness where petitioner did "nothing more than speculate that, if

22   interviewed, [the witness] might have given information helpful to [the defense]")'; *Grisby v.*

23

*Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (speculation about what an expert might have testified is insufficient to show ineffective assistance of counsel);

In this case, there is nothing in the record to indicate that any of the individuals in question in fact had any relevant and admissible evidence that would have assisted the defense, or that there is a reasonable probability that their testimony would have changed the outcome of the trial. Petitioner presents nothing from any of the potential witnesses indicating that they would have been available to testify or what their testimony would have been. As the record reflects Petitioner is unlikely to be able to show prejudice under *Strickland* with respect to this claim, he fails to show his ineffective assistance of counsel claim has some merit or is substantial.

Petitioner also argues that defense counsel was ineffective in failing to argue that evidence of R.M.'s prior bad acts and the discipline she received from Petitioner as a result was admissible to show R.M.'s motive to fabricate. However, as the Court of Appeals noted, and as discussed above, despite the trial court's limitations, Petitioner did, in fact, introduce a significant amount of evidence of R.M.'s alleged misbehavior and the discipline Petitioner imposed in response. *See supra at* Section III.B.1.a, at pp. 19-20; Dkt. 32, at 10-11. Arguing that R.M.'s alleged misbehavior was relevant to provide a motive and alternative explanation for Petitioner's disciplinary actions was not unreasonable and, in fact, was successful to the extent that the trial court allowed Petitioner to introduce evidence of alleged misconduct that he was aware of. Based on this evidence, the defense was able to argue its theory that R.M.'s misbehavior and the discipline she received as a result gave her a motive to fabricate allegations against Petitioner as a means of escaping the household. For instance, in closing, defense counsel argued:

1

2

> I don't have to tell you that in every school in America kids learn about sexual abuse, they're taught that you can say these things and get adults, including your parents, in big trouble. [R.M.] knew that.
> […]
> Why lie about this? I wish I could tell you the answer. I can't get inside [R.M.'s] brain.
> But I can tell you, and we know from the evidence in this case, she wanted to get away. She wanted to move to Alaska with her mother….] She wanted to set herself free, as she said. Teenagers want freedom, but on their own terms.
> It's clear that [R.M.] hated her father.

Dkt. 58-2. Ex. 18, 2199-2200.

Accordingly, as the record reflects Petitioner is unlikely to be able to show prejudice under *Strickland* with respect to this claim, he fails to show his ineffective assistance of counsel claim has some merit or is substantial.

Petitioner fails to demonstrate that any factor external to the defense prevented him from complying with the state's procedural rules and, thus, he has not demonstrated cause for his procedural default. As discussed above, the *Martinez* exception does not apply to excuse Petitioner's procedural default.  Because Petitioner has not met his burden of demonstrating cause for his procedural default, the Court need not separately address the "actual prejudice" prong. *See Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, Petitioner makes no colorable showing of actual innocence. Petitioner thus fails to demonstrate that his procedurally defaulted claims are eligible for federal habeas review. Therefore, Ground 4 should be DENIED.

## IV.    EVIDENTIARY HEARING

Petitioner asks the Court to hold an evidentiary hearing. Dkts. 18, 64. The court retains the discretion to conduct an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

REPORT AND RECOMMENDATION - 51

1    *Id.*, at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's

2    review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

3    A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. §

4    2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual

5    allegations or otherwise precludes habeas relief, a district court is not required to hold an

6    evidentiary hearing." *Id.*; *Pinholster*, 563 U.S. at 185 ("If a claim has been adjudicated on the

7    merits by a state court, a federal habeas petitioner must overcome the limitations of § 2254(d)(1)

8    on the record that was before the state court.")[60]; s*ee also Sully v. Ayers*, 725 F.3d 1057, 1075

9    (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court

10   may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been

11   satisfied [. . .] an evidentiary hearing is pointless once the district court has determined that §

12   2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

13           With respect to Grounds 1-3, which were decided on the merits in state court, the Court

14   concludes Petitioner's habeas claims may be resolved by review of the existing record and no

15   evidentiary hearing is required because Petitioner's allegations do not entitle him to habeas

16   relief. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is

17   not required on issues that can be resolved by reference to the state court record.").

18           Petitioner also fails to establish he is entitled to an evidentiary hearing with respect to

19   Ground 4, which the Court concludes is procedurally barred. 28 U.S.C. 2254(e)(2) bars federal

20   courts from conducting an evidentiary hearing unless the petitioner demonstrates his claim relies

21   upon (1) either a new constitutional right that the Supreme Court made retroactive to cases on

22

23

---

[60] The *Pinholster* limitation also applies to claims brought under § 2254(d)(2). *See Gulbrandson v. Ryan*, 738 F.3d 976, 993, n. 6 (9th Cir. 2013).

1    federal review or "a factual predicate that could not have been previously discovered through the

2    exercise of due diligence," and (2) "the facts underlying the claim would be sufficient to

3    establish by clear and convincing evidence that but for constitutional error, no reasonable

4    factfinder would have found the applicant guilty of the underlying offense." Here, Petitioner

5    makes no such showing. The Court also notes that Petitioner acknowledges in his motion that all

6    four of his grounds for habeas relief "are record-based claims and can be proven by a review of

7    the state court record." Dkt. 64, at 3.

8           Accordingly, Petitioner's motion for an evidentiary hearing (Dkt. 64) is DENIED.

9                          **V.    CERTIFICATE OF APPEALABILITY**

10          A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

11   dismissal of his federal habeas petition only after obtaining a certificate of appealability from a

12   district or circuit judge. A certificate of appealability may issue only where a petitioner has made

13   "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A

14   petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

15   district court's resolution of his constitutional claims or that jurists could conclude the issues

16   presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

17   U.S. 322, 327 (2003). Under this standard, the Court concludes that a certificate of appealability

18   should be DENIED.

19                                **VI.    CONCLUSION**

20          Based upon the foregoing, the undersigned recommends that the Court DENY

21   Petitioner's "motion for finding of subterfuge" (Dkt. 55)  and DENY the motion "motion for

22   evidentiary hearing" (Dkt. 64). The Court further recommends the amended federal habeas

23   petition (Dkt. 18) be DENIED and the case be DISMISSED with prejudice. The Court also

REPORT AND RECOMMENDATION - 53

1  recommends that a certificate of appealability be DENIED. A proposed order accompanies this

2  Report and Recommendation.

3                    **VII.      OBJECTIONS AND APPEAL**

4          This Report and Recommendation is not an appealable order. Therefore a notice of

5  appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

6  assigned District Judge enters a judgment in the case.

7          Objections, however, may be filed and served upon all parties no later than **November

8  15, 2021.**  The Clerk should note the matter for **November 19, 2021**, as ready for the District

9  Judge's consideration if no objection is filed.  If objections are filed, any response is due within

10  14 days after being served with the objections.  A party filing an objection must note the matter

11  for the Court's consideration 14 days from the date the objection is filed and served.  The matter

12  will then be ready for the Court's consideration on the date the response is due.  Objections and

13  responses shall not exceed 12 pages.  The failure to timely object may affect the right to appeal.

14          DATED this 25th day of October, 2021.

15

16  _____
    BRIAN A. TSUCHIDA

17  United States Magistrate Judge

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 54